CHARLES A. OSS ET AL., APPELLEES, V. HARTFORD ACCIDENT & INDEMNITY COMPANY, APPELLANT.

FILED JANUARY 31, 1936. No. 29445.

*Crofoot, Fraser, Connolly & Stryker,* for appellant.

*Johnsen, Gross & Crawford, contra.*

Heard before GOOD, EBERLY and DAY, JJ., and RAPER and PROUDFIT, District Judges.

PROUDFIT, District Judge.

This action is brought to this court on appeal from the

district court for Douglas county, wherein the plaintiffs sought to recover damages said to accrue to them by reason of a breach in the conditions of an indemnity bond executed by the defendant as surety for the American Live Stock Commission Company as principal. The material conditions of the bond are more fully set out in the opinion.

The plaintiffs in the action are Charles A. Oss, alleged to be the owner of cattle sold by the principal as agent and broker, the receiver of the Newman Grove State Bank of Newman Grove, Nebraska, and George H. Gutru, alleged holders of chattel mortgages on the cattle. The amended petition charges that the plaintiff Oss was the owner of 25 head of cattle, that 6 of these cattle were mortgaged to the Newman Grove State Bank for $1,837.50; that part of the cattle was mortgaged to George H. Gutru for $745.57; that the cattle were consigned in the name of Gullik Oss to the American Live Stock Commission Company for sale on May 18, 1926; that said company sold the cattle for $1,836.09, and failed to remit the proceeds of sale to plaintiffs. The amended petition prays for judgment against the defendant and in favor of the plaintiffs, and each of them, in the sum of $1,836.09, together with interest.

The answer admits the residence of plaintiffs, and that the plaintiff Newman Grove State Bank was duly organized and existing under the laws of the state of Nebraska, and engaged in a general banking business at Newman Grove, and that E. H. Luikart is the duly appointed and acting receiver of said bank; that the plaintiff George H. Gutru is a resident of Newman Grove, and that the defendant is, and was at all times mentioned in this action, engaged in the writing of general insurance and surety and indemnity bonds in the state of Nebraska, and that there had been executed and delivered by the American Live Stock Commission Company as principal, and the defendant as surety, a bond substantially in the form set forth in plaintiffs' amended petition, and the said bond was on said date in full force and effect, and that due notice of claim thereunder

was served upon said defendant, as set forth in said amended petition.

The defendant denies generally all other allegations contained in the amended petition not specifically admitted to be true. By way of further defense, the defendant alleges that neither the plaintiff Luikart, as receiver of the Newman Grove State Bank, nor George H. Gutru may recover in this action for the following reasons:

1. That the said plaintiffs as mortgagees, not being within the terms of the bond, could not recover thereon.

2. That neither the American Live Stock Commission Company nor the defendant ever had any knowledge, actual or constructive, prior to the presentation of claims by said plaintiffs, of the alleged and claimed mortgages.

3. That the Newman Grove State Bank and George H. Gutru had, prior to May 19 and 20, 1926, and since said dates waived any claim under said mortgages.

4. That Charles A. Oss was not on the dates of their alleged execution the owner of the property purported to be described and mortgaged by said mortgages.

5. That the American Live Stock Commission Company did not on May 19 and 20, 1926, or at any other time, deal in any way with any property described in and purported to be mortgaged by said alleged mortgages.

6. That the said plaintiff, Charles A. Oss, was a copartner in the American Live Stock Commission Company on said dates, May 19 and 20, 1926, and liable as a copartner for an accounting to the owner of said cattle for the proceeds of sale of same, and all of the plaintiffs are therefore estopped to maintain this action.

7. That on or about January 1, 1927, for a valuable consideration, the said Charles A. Oss purchased all of the assets, goodwill and name of the American Live Stock Commission Company, including especially all liability for proceeds of sale of live stock previously sold by said commission company as agent and broker, and therefore all of the plaintiffs are estopped to maintain this action.

8. That the American Live Stock Commission Company

did not, on May 19 and 20, 1926, or at any time, deal in any way with any cattle owned or consigned by the plaintiff Charles A. Oss.

9. That the plaintiffs are not the owners of the alleged claim nor cause sued upon.

And defendant prays that the amended petition of plaintiffs be dismissed, and that it recover its costs.

The reply of plaintiffs to said answer amounts to a denial of all facts set forth in the answer except such as are admissions of facts pleaded in the plaintiffs' amended petition.

The cause was tried to a jury, and at the close of all of the evidence, on motion of counsel for plaintiffs, the court discharged the jury over the objection of counsel for defendant and entered a judgment in favor of plaintiffs and against the defendant of $2,461, with interest at 6 per cent. from date of rendition thereof.

Motion for new trial being overruled, the defendant brings the cause to this court on appeal.

Of the errors relied upon for reversal only the following need to be noted: (1) The court erred in overruling the defendant's motion for directed verdict and judgment made at the close of plaintiffs' evidence, for the reasons therein relied upon. (2) The court erred in sustaining the plaintiffs' motion at the close of all the evidence. (3) The court erred in not sustaining the defendant's motion for new trial for the reasons set forth in said motion.

An examination of the record in this case discloses that the plaintiff Charles A. Oss was employed as a yard salesman by the American Live Stock Commission Company in Omaha during the month of May, 1926. At that time this plaintiff was also interested in feeding cattle at Newman Grove, Nebraska, the operations at the feed yard being under the management of his father, G., or Gullik, Oss, and one Frank Johnson; that a shipment consisting of 25 head of cattle was consigned in the name of G. Oss to the American Live Stock Commission Company in Omaha, arriving on the 18th of May, 1926. Part of the cattle was sold that

day and part the next day. The plaintiffs, E. H. Luikart, receiver of the Newman Grove State Bank, and George H. Gutru, are claiming an interest in the proceeds of said cattle by virtue of certain chattel mortgages executed by the said Charles A. Oss, one to the Newman Grove State Bank, and the other to George H. Gutru. It is claimed by the plaintiffs that the American Live Stock Commission Company never accounted for the proceeds of said sale, but that same were misappropriated. The live stock company, in compliance with the federal law known as the Packers and Stockyards Act of 1921, was operating under a bond that provided that, if all the obligations created or incurred by the principal (in this case the American Live Stock Commission Company) are faithfully and promptly performed, then the bond shall be null and void, otherwise to remain in full force and effect. The conditions of the bond further provided that such obligations include (but are not limited by) the faithful and prompt accounting for and payment of the proceeds of sale of live stock received for sale by such marketing agency for or on account of the owner or consignor. And further provides that any person damaged by the breach of any condition thereof may maintain an action on this bond in his own name and recover his damages after first giving written notice to the trustee named therein, or the said trustee may maintain an action in his own name, recovery to be made for the use of the person damaged, and both principal and surety waive every defense, if any there might be, based upon the fact that any person damaged or in whose name the suit shall be brought is not party or privy to this bond. The bond also specifically provides that the principal and surety are held and firmly bound unto the secretary of the Omaha Live Stock Exchange as trustee for all persons who may be damaged through the breach of said bond as obligee in the sum of $5,000.

In the brief filed herein and in the oral argument, counsel for defendant urged strenuously that the mortgagees could not join in this action, that they were not parties to

the bond, and the only right that they had would be to impound the proceeds of any recovery that the plaintiff Oss might secure. It is very clear that the mortgagees had a direct interest in a recovery under this bond, and under the provision of section 20-311, Comp. St. 1929, it would appear that the action was properly brought in the name of the owner of the property involved and the mortgagees. Said section provides: "All persons having an interest in the subject of the action, and in obtaining the relief demanded, may be joined as plaintiffs, except as otherwise provided in this chapter."

The contention of the plaintiffs is that the express terms of the bond are broad enough to include mortgagees as well as owners. Among other conditions of the bond is this:

"Any person damaged by the breach of any condition hereof may maintain an action on this bond in his own name to recover his damages, after first giving written notice to the trustee named herein."

And a further condition of said bond is:

"Both principal and surety hereby waive every defense, if any there might be, based upon the fact that any person damaged or in whose name the suit shall be brought is not party or privy to this bond."

The language of this clause is clear and explicit and would seem to exclude any defense based upon the proposition that the mortgagee is not protected. If it be urged that the expression "any person" does not include mortgagee as well as mortgagor or consignor of live stock, reference to the first paragraph of the bond discloses the fact that the obligors bound themselves to the trustee named in the bond for "all persons who may be damaged through the breach thereof." The language of the bond is comprehensive and all inclusive, and the mortgagees are clearly within the protection of the said bond and may properly be joined as parties plaintiff with the owner of the live stock in this action.

Upon the oral argument of this case it was urged by the defendant that the plaintiff Oss was not entitled to appear

in this action as party plaintiff by reason of the fact of his having been adjudged a bankrupt since the accrual of this action, and therefore the cause of action belonged to his estate in bankruptcy and he could not maintain the action. There is no issue presented in the pleadings in relation to the bankruptcy proceedings and the same need not be further considered in this opinion.

In order for the plaintiffs to recover in this action, it was necessary for them to establish by a preponderance of the evidence all of the material allegations of their amended petition, such as the ownership of the live stock, the rights, if any, created by the execution of the chattel mortgages, receipt of the live stock by the commission company, the sale thereof, the amount received therefrom, and the failure to account to plaintiffs for such proceeds. If it be conceded that the evidence of the plaintiffs was sufficient to establish the ownership of the live stock and the rights of the mortgagees under the several mortgages, the shipment and receipt of the live stock by the commission company, and the sale thereof, there still remains the material allegations of the amount received from the sales and the misappropriation thereof.

The plaintiffs sought to establish the amount received from the sale of said cattle by the exhibits Nos. 5 and 6, attached to the bill of exceptions. The plaintiff Oss, who it seems was the salesman, did not keep the record of the sales. The record of the sales was evidently made up by an office man by the name of Burgess. On the cross-examination Mr. Oss is asked as to who prepared exhibits Nos. 5 and 6, same being certain accounts of sales. He says that the writing is that of one Bill Burgess who worked for the American Live Stock Commission Company and is still in the yards. He is then asked if he knows who made the calculations and set down the figures. His answer is: "I suppose Bill did, I think it is his writing; it is either his or Leonard's, I am not so sure." The witness previously testified that exhibits Nos. 5 and 6 were correct and accurate records of the account of sales of those cattle, and on mo-

tion of defendant's counsel his affirmative answer to that question was stricken, as there was no sufficient foundation laid therefor, and there was no further attempt to identify the accounts of sales as a part of the records of the commission company, the man Burgess not being called as a witness in the case.

The plaintiff Oss undertook to explain certain entries appearing in these accounts of sales, exhibits 5 and 6, and then the exhibits were reoffered in evidence, to which the defendant objected as no foundation laid and not properly identified by the party who made the record. The court overruled the objection and the exhibits were admitted. There was not a proper foundation laid for the introduction of these exhibits and their reception in evidence was erroneous. Oss states in his direct examination that he had nothing to do with the books or the office. "I sold the cattle, and that was all I did." As to the mortgages being in fact paid at the time of the sale, the witness Oss testifies as follows: "Q. Was the money, $1,837.50 in one mortgage, and $745.57, in the other, was that owing by you to the Newman Grove State Bank at the time the cattle were sold?" By defendant's counsel: "Objected to as involving a legal conclusion." The Court: "Overruled." Defendant excepts. "A. There might have been part of these mortgages paid off and applied on the notes at the bank before. I don't know as I owed that full amount. Q. Did you owe the amount of the proceeds of the cattle under these mortgages? A. Yes, sir."

In connection with this portion of the record, reference may be had to the cross-examination of this witness on this point. "Q. You have just testified that 38 of the 55 steers on the $745.57 mortgage had been sold and the proceeds credited on this mortgage? A. I had a lot of debts up there. Q. Do I understand that the Newman Grove State Bank took the proceeds of sales which they claimed to have a mortgage on, and credited the proceeds to other mortgages? A. On other mortgages to the same bank. It happens lots of times. If you have done any banking with cattle, you

know it has happened every now and then." In the light of the cross-examination, his answer to the question, "Did you owe the amount of the proceeds of the cattle under these mortgages?" might be strictly true and yet the mortgage under which these specific cattle were pledged might have been satisfied. The only evidence that appears in the record as to these mortgages, whether they were in force or not, is furnished by the witness Charles A. Oss, plaintiff in the action. The mortgagees, Luikart and Gutru, give no testimony on any phase of this case.

The only evidence that the record discloses as to failure to account for the proceeds is by the same witness, Charles A. Oss, and is very brief; quoting from the record: "Now, Charlie, after these cattle were sold to the different buyers, do you know what happened to the money? A. I didn't then. Q. When did you find out about it? A. I found out about it after George was dead (about six months after the shipment). I wrote out a check—I needed some money and I wrote out a check on the Newman Grove State Bank and it came back 'No account.' Of course, there should have been a little bit of this left over. Q. There should have been a little bit left, over the mortgages, from the sale of these cattle? A. Yes, about $150 or so. Q. Then, what did you find out about it? A. I found out that it had been misappropriated, that is all, he had never sent it." Defendant's counsel: "I move that answer be stricken as immaterial." The Court: "That calls for a conclusion, it may go out." There is no further evidence of failure to account for the proceeds, and the answer of the witness having been stricken, it leaves no evidence upon which to base a judgment for plaintiffs in this action.

For the reasons set forth herein, the judgment of the trial court must be reversed and the cause remanded for further proceedings according to law.

REVERSED.