**FIRST STATE BANK, a corporation, Plaintiff-Appellant,**

v.

**Lester MAXFIELD et al., Defendants-Appellees.**

**No. 73-1064.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted July 10, 1973.

Decided Aug. 22, 1973.

Rehearing Denied Sept. 12, 1973.

George P. Burke of Van Steenberg, Myers & Burke, Kimball, Neb., for plaintiff-appellant.

R. Michael Mullikin of Lathrop, Uchner & Mullikin, Cheyenne, Wyo., for defendants-appellees.

Before SETH, BARRETT and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

Involved in this case is a claim by a bank based on a security transaction. The Bank's arrangement was with one James W. Faden, deceased, a rancher in Banner County, Nebraska. Faden sold several lots of cattle through the Torrington Livestock Commission Company in Torrington, Wyoming, and the Bank's suit alleged a security interest in the cattle. It sought to recover in conversion against the owners of the Commission Company and in an action for violation of the bond executed by the defendants and their surety. The trial court entered judgment in favor of the defendant Commission Company, that is, the auctioneer. The basis for the ruling was that the particular sales complained

about were not subject to the security transaction between the Bank and Faden. The court ruled that the financing statement and the security agreement contemplated that the collateral was to be livestock used or purchased primarily for the farming and ranching operations of Faden in Banner County, Nebraska. The court further ruled that Faden was engaged not only in livestock growing but also had a distinct operation consisting of dealing in livestock, and that the cattle purchased and sold in the particular transactions were not encompassed by the security agreement but, rather, were carried out incident to Faden's livestock trading.

For practical purposes, this transaction started in November 1965, at which time Faden was indebted to the Bank in the amount of $38,360. He signed and delivered to the Bank a financing statement and security agreement.[1] On the next day, November 9, 1965, the financing statement and security agreement was filed in the office of the Clerk of Banner County, Nebraska. A continuation statement was filed on August 14, 1970.

During this period the evidence established that there were approximately ten transactions in which Faden sold cattle which may have been purchased with Bank funds. He pocketed the proceeds. During this entire period the principal of the debt was not reduced. However, Faden did pay the interest on it.

In issue here are four different cattle sales by Faden which took place starting in 1967 and continuing until Faden's death in early 1971. On June 23, 1967, Faden purchased 79 head of cattle in

Scottsbluff County, Nebraska. He obtained a loan on June 27 in the amount of $10,500 from the Bank in order to pay for these, but before applying for and getting the loan the cattle were sold. Faden consigned them immediately after purchase to the Torrington Livestock Commission Company, and on June 23 they were sold and the proceeds were deposited in Faden's bank account in Scottsbluff National Bank, Scottsbluff, Nebraska. On December 18, 1967, Faden acquired 64 head of cattle in Wyoming and sold them in Wyoming. On May 8, 1968, two steers were sold by defendant Commission Company. These had been brought from Wyoming to Nebraska for their sale. They had been purchased on March 14, 1967, by the Livestock Commission Company, Chappell, Nebraska. There is a dearth of evidence establishing where these cattle were between March and May. Then, on October 29, 1969, the Commission Company sold some cattle which had been purchased the previous day from another commission company at Torrington, Wyoming and were never outside the State of Wyoming.

As a result of these transactions and others there was a total debt of $147,600 as of December 5, 1970. Following Faden's death in January 1971, the Bank repossessed 102 cattle which were located on Faden's land in Banner County, Nebraska. The proceeds from the sale of this herd reduced the debt to the Bank to $127,152.43.

The trial court made very careful findings of fact and conclusions of law in which it found that purchases of livestock by Faden on the dates here in

1. In pertinent part this form statement provides as follows:
   Debtor, whether one or more, for consideration, hereby grants to Secured Party a security interest in the following property and any and all increase, additions, accessions and substitutions thereto or therefore (hereinafter called Collateral):
   Livestock
   If marked here ☒ Debtor grants a security interest in all similar property owned by Debtor during the time the obligations are outstanding, although such property may be acquired or be natural increase after the date hereof.
   If marked here ☒ the security interest shall attach to all product and proceeds of Collateral, but Secured Party does not hereby consent to the sale of the Collateral.

question were carried out by Faden and the sales made at the auction barn of the Commission Company had to do with the four transactions here in question and were part of Faden's business of trading livestock and were not incident to his farming and ranching operations in Banner County, Nebraska. The court also found that the Bank allowed sales to be made without first obtaining its permission.[2]

It was also a fact, and the court also found, that the Maxfields, owners of the Torrington Livestock Commission Company, were unaware of the Bank's interest in the cattle sold. They were conceded by the Bank to be entirely innocent parties. The court concluded that the Bank never acquired a security interest in the cattle here in question since it was the intent of the parties that the security interest would attach only to the livestock used in the farming and ranching operations in Banner County, Nebraska; that the Bank's rights did not attach to those cattle which were used in Faden's dealing activities.[3]

The trial court also found that even if the Bank had an interest in the livestock, it waived this interest as a result of its course of conduct allowing Faden to sell the livestock and have the proceeds paid directly to him, relying on him to account to the Bank. As to the two groups of livestock brought into Wyoming from Nebraska, the court said that even if the Bank had a security interest in these that they were sold in such a manner as to create an exemption under the Nebraska law and that the security agreement would have no force and effect as to the two groups of cattle purchased and sold in Wyoming. The Nebraska statute cited by the court allows an auctioneer who has no notice of an outstanding security interest to sell property free of the lien. Neb.R.R. Stat.1943, § 69–109.01. The Wyoming statute relied on is Wyo.Stat. (Cum. Supp.1961) § 34–9–103(3).[4]

We need not consider whether it was a waiver or whether the specific Nebraska or Wyoming statutes bar this action since we have determined that the Bank is not entitled to recover because the security agreement was not effective as to the cattle here in question, the cattle having been sold pursuant to Faden's activity as a dealer and never becoming the property of the Bank.

In reaching this conclusion we recognize that generally where a mortgagee of personal property has a lien, an

2.  On this the court found:
    That the Bank, from the period of 1965 through 1970, had engaged in a course of conduct whereby it permitted its borrowers whose loans were secured by livestock to sell their livestock from time to time as the borrowers chose and relied upon such borrowers, including Faden, to bring in the proceeds from such sales to be applied upon the indebtedness owed to the Bank. Furthermore, the Bank declined to exercise its right to require the borrowers to obtain the Bank's written authority before disposing of said livestock.

3.  Conclusion number 4 reads:
    James W. Faden was engaged in two distinct operations during the period from 1965 until his death, to-wit: (i) raising livestock and farming on his farm in Banner County, Nebraska; and (ii) buying and selling livestock on a short-term basis or otherwise described as the business of trading livestock.

4.  As to this the court concluded (Conclusion number 6):
    Even if the Bank had acquired a security interest in the livestock sold by defendant Torrington during said period of time, the security interest was of no force and effect because the two bunches of livestock bought by Faden in Nebraska and sold in Wyoming were sold by the defendant Torrington in such a manner as to exempt that defendant pursuant to Nebraska law from liability for conversion. R.R.S.1943, 69–109.01. Furthermore, the two bunches of livestock purchased and sold by Faden in Wyoming and which were never in Nebraska, were not the type of collateral for a secured transaction entitled to the protection of perfected security interests pursuant to Wyo. Stat. (Cum.Supp.1961) § 34–9–103(3).

auctioneer who sells the property becomes liable in conversion.[5] The problem here is, however, that the Bank did not have an enforceable security interest.

 The requirement of § 9–203 of the UCC with relation to the signing of a security agreement was satisfied. Also, there was no deficiency in the description of the collateral. § 9–110. But on its face the security agreement provided that the debtor granted a security interest in livestock for farming operations rather than for "personal, family or household purposes," or for "business purposes." Thus, the security agreement evidences the intent of the parties to create a security interest in the livestock used in farming operations as opposed to "inventory." See § 9–109. It is obvious that the Bank wished to take advantage of § 9–307 which provides that a buyer in the ordinary course of business takes free of a security interest created by the seller except where purchasing farm products from a person engaged in farming operations.

Here the Bank officer testified that the Bank believed that the purchased cattle in each instance were to be transferred to Faden's ranch for fattening. Thus, it was anticipated that the cattle pledged would become farm products. It becomes clear therefore that the cattle in controversy would not come within this category; these were not subject to the security agreement.

We recognize that a bank or lender need not under existing law police his collateral.[6] Cf. Benedict v. Ratner, 268 U.S. 353, 45 S.Ct. 566, 69 L.Ed. 991 (1925). Nevertheless, the agreement does not embrace collateral that has not been pledged. See 2 Gilmore, Security Interests in Personal Property, § 35.5, at 931–32.

 The cattle involved in this controversy which were sold by Faden were found by the court to be cattle owned and used by Faden as a cattle trader rather than livestock owned and used in a ranching operation. The evidence was amply sufficient to support this finding. Since the Code authorizes that the principal use to which property is put should be determinative of its classification, we conclude that the cattle here in question were inventory, rather than farm products.[7] As such, they were not part of the course of financing covered by the security agreement and the Bank has no right to recover the sales price from the appellees.[8]

The judgment is affirmed.

5. 7 Am.Jur.2d, Auctions and Auctioneers, § 68 (1965); 18 Am.Jur.2d, Conversion, § 53 (1965).

6. See Uniform Commercial Code § 9–205.

7. See Official Comments 2 and 4 to § 9–109. See also First Nat'l Bank of Elkhart County v. Smoker, 286 N.E.2d 203, 209 (Ind.App.1972) (slaughtered cattle); 2 Gilmore, supra, at 710–715; Sorelle, Farm Products under the UCC—Is a Special Classification Desirable?, 47 Texas L.Rev. 309, 310 (1969); Comment, Problems in Agricultural Lending, 39 Colo.L.Rev. 352, 356–357 (1967).

Compare Swift & Co. v. Jamestown Nat'l Bank, 426 F.2d 1099, 1102 (8th Cir. 1970); United States v. Mid-States Sales Co., 336 F.Supp. 1099, 1102 (D. Neb.1971).

8. See Tri-County Livestock Auction Co. v. Bank of Madison, 228 Ga. 325, 185 S.E. 2d 393 (1971).