FIRST STATE BANK, A CORPORATION, APPELLEE AND CROSS-APPELLANT, V. PRODUCERS LIVESTOCK MARKETING ASSOCIATION NON-STOCK COOPERATIVE, A CORPORATION, ET AL., APPELLANTS AND CROSS-APPELLEES.

261 N. W. 2d 854

Filed February 1, 1978. No. 41269.

Leonard Kovarik of Holtorf, Hansen, Kovarik & Nuttleman and Loren G. Olsson of Olsson & Olsson, for appellants.

George P. Burke of Van Steenberg, Myers & Burke, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

BOSLAUGH, J.

This case involves a controversy concerning a security interest in cattle owned by James W. Faden. Faden, who died on January 12, 1971, was a farmer and rancher who lived in southern Banner County, Nebraska. On November 8, 1965, he executed and delivered a financing statement and security agreement to the plaintiff, First State Bank at Kimball, Nebraska. On that date he borrowed $12,200 from the bank. His total indebtedness to the bank was then $38,360. The financing statement and security agreement was filed in Banner County on November 9, 1965, and a continuation agreement was filed on August 14, 1970. At the time of his death Faden owed the bank nearly $150,000.

The security agreement secured future advances and granted a security interest in "livestock" including any "increase, additions, accessions and substitutions thereto." The agreement further provided:

"If marked here ☒ Debtor grants a security interest in all similar property owned by Debtor during the time the obligations are outstanding, although such property may be acquired or be natural increase after the date hereof.

"If marked here ☒ the security interest shall attach to all product and proceeds of Collateral, but Secured Party does not hereby consent to the sale of the collateral.

"If marked here ☐ Debtor shall, so long as no event of default has occurred, have the right in the regular course of business, to process and sell inventory and farm products only, but the security interest shall attach to all product and proceeds of all Collateral. * * *

"Debtor warrants that unless marked otherwise the Collateral is used or being bought primarily for personal, family or household purposes; but if marked here ☒ for farming operations, if marked here ☐ for business operations, and if marked here ☐ the Collateral is being acquired with the proceeds of the note or notes, which Secured Party may disburse directly to the seller of the Collateral."

The defendant Producers Livestock Marketing Association Non-Stock Cooperative, hereinafter referred to as Producers, operates a livestock auction business in Gering, Nebraska. In a series of six transactions between February 1, 1969, and March 28, 1970, Faden sold 112 head of cattle at the auction in Gering and deposited the proceeds in the Scottsbluff National Bank at Scottsbluff, Nebraska. The plaintiff claims these cattle were covered by the security agreement and that Producers is liable to the plaintiff for the proceeds from the sale of the cattle.

The defendant National Livestock Producers Association, hereinafter referred to as National, was a clearing agency for Producers and had furnished a bond as required by the regulations under the Packers and Stockyards Act. The defendant Fireman's Insurance Company of Newark, New Jersey, was the surety on the bond. The plaintiff's first cause of action sought to recover against all the defendants on the bond. The second cause of action was against Producers for conversion.

National and its surety filed a cross-petition against Producers for indemnity in the event the plaintiff obtained a judgment against National and

its surety. By agreement of the parties the issues on the cross-petition were tried separately.

The trial court found generally for the plaintiff on its petition and against all defendants. The trial court found specifically that the plaintiff had a security interest in all the livestock owned by Faden and involved in this action. The defendants have appealed.

The first transaction which is in dispute took place on February 1, 1969. On that date Faden sold 2 head of cattle at Gering, through Producers for net proceeds of $719.35.

On May 17, 1969, Faden sold 5 head of cattle at Gering, through Producers for net proceeds of $1,199.55. The evidence does not show where the cattle sold on these two dates originated.

On December 19, 1969, Faden purchased 47 head of cattle at the Torrington Livestock Commission Company at Torrington, Wyoming, for $9,464.19 and paid for them with a check on the plaintiff bank. The cattle were shipped to Gering, Nebraska, and sold through Producers on December 20, 1969, for net proceeds of $8,326.88. Two days later Faden borrowed $9,500 from the plaintiff to cover his December 19, 1969, check.

On January 16, 1970, Faden purchased 37 head of cattle at Torrington for $8,079.77. The cattle were shipped to Gering and sold through Producers on the following day, January 17, 1970, for net proceeds of $7,496.72. Three days later, Faden borrowed $8,000 from the plaintiff bank to cover his check of January 16, 1970.

On February 20, 1970, Faden purchased 9 head of cattle at Torrington for $2,054. The cattle were shipped to Gering and sold the following day, February 21, 1970, through Producers for net proceeds of $1,883.48. On February 26, 1970, Faden borrowed $2,100 from the plaintiff bank to cover his check of February 20, 1970.

On March 26, 1970, Faden purchased 21 head of cattle at Torrington for $5,697. Twelve of these cattle were shipped to Gering and sold through Producers on March 28, 1970, for net proceeds of $2,850.65. On March 31, 1970, Faden borrowed $5,700 from the plaintiff bank to cover his check of March 26, 1970.

The defendants contend that the security agreement did not cover the cattle sold through Producers in the transactions described above because they were not "farm products." The defendants claim that Faden was actually engaged in two occupations and that in addition to being a farmer and rancher he was a cattle trader or speculator.

Under the Uniform Commercial Code, goods are classified as consumer goods, equipment, farm products, or inventory. Livestock used or produced in farming operations and in the possession of a debtor engaged in raising, fattening, grazing, or other farming operations are farm products. If goods are farm products they are neither equipment nor inventory. § 9-109 (3), U. C. C.

Goods which are held for sale or lease are classified as inventory. § 9-109 (4), U. C. C. The Comment to section 9-109, U. C. C., states that the classifications are mutually exclusive and that the principal test to determine whether goods are inventory is whether they are held for immediate or ultimate sale. In borderline cases the principal use to which the property is put should be considered determinative.

As to the cattle which were sold on February 1, 1969, and May 17, 1969, there is no evidence as to their origin. In the absence of any evidence to show affirmatively that these cattle were not a part of the farming and ranching operation of Faden the trial court could have concluded that they were farm products.

As to the cattle which were sold on December 20,

1969, January 17, 1970, February 21, 1970, and March 28, 1970, the evidence shows affirmatively and without dispute that they were purchased in Torrington, Wyoming, 1 or 2 days before they were shipped to Gering, Nebraska, for sale. These cattle were goods held for immediate sale and there is nothing to indicate they had any connection whatsoever with Faden's farming and ranching operation in Banner County. Under the facts in this case these cattle were inventory as a matter of law.

It is clear from the terms of the security agreement that the plaintiff and Faden intended to create a security interest in livestock used or bought primarily for farming operations and not business operations. The bank may not have been aware of Faden's activities as a cattle trader but the record establishes that the transactions involved in this case were not isolated instances.

First State Bank v. Maxfield, 485 F. 2d 71, decided by the United States Court of Appeals, 10th Circuit, involved a very similar factual situation. That case involved the same debtor, the same bank, the same security agreement, but a different livestock auctioneer and a different group of cattle.

The Maxfield case involved four transactions in which Faden had sold cattle through the Torrington Livestock Commission Company at Torrington, Wyoming. In one of the transactions Faden had purchased 79 head of cattle in Scotts Bluff County, Nebraska, and had sold them that same day in Torrington. In another transaction Faden had purchased cattle from a different commission company at Torrington and had then sold the same cattle on the following day through the Torrington Livestock Commission Company.

The federal court held the security agreement was not effective as to the cattle in question because they were sold pursuant to Faden's activity as a dealer. The court said: "But on its face the security agree-

ment provided that the debtor granted a security interest in livestock for farming operations rather than for 'personal, family or household purposes,' or for 'business purposes.' Thus, the security agreement evidences the intent of the parties to create a security interest in the livestock used in farming operations as opposed to 'inventory.' See § 9-109. It is obvious that the Bank wished to take advantage of § 9-307 which provides that a buyer in the ordinary course of business takes free of a security interest created by the seller except where purchasing farm products from a person engaged in farming operations.

"Here the Bank officer testified that the Bank believed that the purchased cattle in each instance were to be transferred to Faden's ranch for fattening. Thus, it was anticipated that the cattle pledged would become farm products. It becomes clear therefore that the cattle in controversy would not come within this category; these were not subject to the security agreement."

The evidence in this case does not support the finding of the trial court that the plaintiff had a security interest in all the livestock owned by Faden and involved in this action. The judgment must, therefore, be reversed and the cause remanded to the District Court for further proceedings.

With respect to the cross-petition of National and its surety, the trial court made no finding other than that the cross-petition should be denied.

At the hearing on the cross-petition it was stipulated that all evidence which had been received in the trial on the plaintiff's petition would be considered as admitted for the purpose of the trial on the cross-petition. In addition thereto, a copy of the agreement between Producers and National and an affidavit as to the reasonable value of the services of counsel for National and its surety were received in evidence.

Under the facts of this case it is clear that as to Producers, National was a surety obligated to respond in the event Producers failed to pay when due to the person or persons entitled thereto the gross amount, less lawful charges, for all livestock sold by Producers. Firemen's Insurance Company was in turn a surety for National on its obligation.

National and its surety rely upon a provision in the regulations issued under the federal act which requires market agencies to account to consignors, shippers, or other interested persons "of whom they have knowledge." 9 C. F. R., § 201.41. The trial court found that Producers had no actual knowledge of any security interest of the plaintiff but did have constructive notice of the financing statement and security interest. The cases which have considered this question appear to hold that constructive notice is sufficient. See, United States v. Sommerville, 211 F. Supp. 843; United States v. Pirnie, 339 F. Supp. 702, affirmed 472 F. 2d 712; Oss v. Hartford Acc. & Ind. Co., 130 Neb. 311, 264 N. W. 897.

As sureties for Producers, National and Firemen's Insurance Company were entitled to a declaration of their right to indemnity from Producers in the event of payment to the plaintiff. The judgment of the District Court dismissing the cross-petition must be reversed and the cause remanded for further proceedings.

The judgment of the District Court on the petition of the plaintiff and on the cross-petition of the defendants is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.