In re NORTHEAST CHICK SERVICES, INC. d/b/a Avian Services, Debtor.

UNITED STATES of America, Plaintiff,

v.

Joseph B. COLLINS, Trustee of the Estate of Northeast Chick Services, Inc. d/b/a Avian Services, Defendant.

RHODE ISLAND HOSPITAL TRUSTEE NATIONAL BANK OF PROVIDENCE, Plaintiff,

v.

Joseph B. COLLINS, Trustee of the Estate of Northeast Chick Services, Inc. d/b/a Avian Services, Defendant.

Bankruptcy No. 4–81–00696–G. Adv. Nos. 4–82–0204, 4–81–0353.

United States Bankruptcy Court, D. Massachusetts.

Oct. 11, 1984.

---

Joseph Ackerstein, Asst. U.S. Atty., Boston, Mass., for the U.S.

Joseph Collins, Springfield, Mass., Trustee.

James Fierberg, Springfield, Mass., for trustee.

Thomas Raftery, Boston, Mass., for Rhode Island Hosp. Trust.

Richard Cohen, Brookline, Mass., for Northeast Chick Services, Inc.

## MEMORANDUM AND ORDER

PAUL W. GLENNON, Bankruptcy Judge.

The Rhode Island Hospital Trust National Bank ("Bank") and the United States of America, on behalf of the Farmer's Home Administration ("FmHA"), each claiming a duly perfected security interest in a flock of live starcross shaver chickens owned by Northeast Chick Services, Inc. ("the "debtor") and/or the proceeds from the sale thereof, filed adversary proceedings to recover same. The adversary proceedings were consolidated for trial. The FmHA

filed a motion for summary judgment. The matters were submitted to the Court by way of stipulations and briefs of the parties.

### FACTS

1. The debtor's business included raising chickens and eggs for sale.

2. On July 19 and September 19, 1979, the debtor entered into a security agreement with the FmHA, granting the FmHA a security interest in, *inter alia*, all crops, farm and other equipment, all livestock, other animals produced or used for commercial purposes, and all increases, replacements, substitutions and additions thereto. The security interest was duly perfected by the filing of financing statements. The financing statements did not contain after acquired clauses.

3. On April 29, 1980, the debtor entered into a security agreement with the Bank, granting the Bank a security interest in its accounts receivables, general intangibles, machinery and equipment and inventory. The security interest was duly perfected by the filing of financing statements.

4. On August 24, 1981, the debtor filed a petition seeking relief under Chapter 11 of the Bankruptcy Code.

5. On August 27, 1981, the debtor applied to the Court to use cash collateral, to wit: The funds generated from the collection of post-and pre-petition accounts receivable. After hearing, and with the consent of the Bank, the Court granted the debtor permission to use the funds for a period not to exceed four weeks.

6. On September 21, 1981, the debtor consented to an order converting the case to one under Chapter 7.

7. On October 14, 1981, the Bank filed a complaint for relief from stay seeking to foreclose on its security. The Chapter 7 trustee admitted the validity of the Bank's security in-interest but denied the Bank's allegation that the chicken and eggs of the debtor were covered by the Bank's security agreement, as they were not "inventory". The trustee also disputed the Bank's security interest in the post-petition assets of the debtor.

8. The Bank and the trustee agreed that the debtor's interest in the chickens could be sold, with the proceeds to be held in escrow pending a Court order determining the rights of the parties to the proceeds.

9. On December 21, 1981, the Bank filed a motion for accounting, clarification and payment of secured claims, asserting that the Court order of August 27, 1981 had granted the Bank a security interest in the debtor's post-petition accounts receivables. The trustee denied this claim.

10. On June 10, 1982, the United States of America, on behalf of the FmHA, filed a complaint seeking to recover proceeds in the amount of $33,238.40, generated by the sale of a flock of approximately 41,000 live starcross shaver chickens. The trustee denied the claims of the FmHA and counterclaimed, under 11 U.S.C. § 506(c), for costs and expenses incurred in preserving the flock of chickens prior to the sale. The FmHA did not file an answer to the counterclaim.

11. Pursuant to a motion by the Chapter 7 trustee and with the consent of all parties, the Court consolidated the two adversary proceedings for trial. As set forth above, the matters were presented to the Court by way of stipulations and briefs.

### DISCUSSION

I. The Bank does not have a perfected security interest in the chickens and eggs of the debtor.

The security agreement executed between the Bank and the debtor granted to the Bank, *inter alia*, a security interest in the debtor's accounts receivable, machinery, equipment, general intangibles and inventory. The Bank argues that the chickens and eggs owned by the debtor should be classified as inventory under the Uniform Commercial Code as adopted in Massachusetts, M.G.L. ch. 106, § 1–101 *et seq.*, and not farm products, and thereby are covered by the security agreement exe-

cuted by the parties. The trustee argues that the chickens and eggs should be classified as farm products, which classification would leave the chickens and eggs free from any security interest of the Bank.

■ No Massachusetts court has decided the question of whether chickens and eggs are considered farm products or inventory. M.G.L. ch. 106, § 9–109(3) defines goods as farm products,

"if they are crops or livestock or supplies used or produced in farming operations or if they are products of crops or livestock in their unmanufactured states, such as ginned cotton, wool clip, maple syrup, milk and eggs, and if they are in the possession of a debtor engaged in raising, fattening, grazing or other farm operations.... If goods are farm products, they are neither equipment nor inventory."

Inventory is defined as goods,

"held by a person who holds them for sale or lease or to be furnished under contracts of service or if he has so furnished them, or if they are raw materials, work in process, or materials used or consumed in a business ..." M.G.L. ch. 106, § 9–109(4).

Generally "the principal test to determine whether goods are inventory is whether they are held for immediate or ultimate sale. *First State Bank v. Producers Livestock Marketing Association*, 200 Neb. 12, 261 N.W.2d 854, 23 UCC Rep.Serv. 500, 503 (1978); *see also In re Houts*, 31 UCC Rep. Serv. 338 (N.D.N.Y.1981) and M.G.L. ch. 106, § 9–109, Official Comments 2 and 3. When attempting to determine whether goods are inventory or farm products, however, the fact that the goods are held for ultimate sale is less determinative, since all farm products are eventually sold. *See generally Cox v. Bancoklahoma Agri-Service Corp.*, 35 UCC Rep.Serv. 288, 641 S.W.2d 400 (Texas 1982) and *In re Charo-*

*lais Breeding Ranches, Inc.*, 20 UCC Rep. Serv. 193 (W.D.Wis.1976).

■ Although the Uniform Commercial Code does not contain a definition of livestock so there may be a question as to whether chickens are livestock, Official Comment 4 to § 9–109 states that: "since eggs are products of livestock, livestock includes fowl", finding this obvious from the very words of the text. In construing statutes substantially similar to if not identical to the one in question, non-Massachusetts courts have found that chickens and eggs, in the hands of a person who raises or produces them, are farm products and not inventory. *See United States v. Pete Brown Enterprises*, 328 F.Supp. 600 (N.D. Miss.1971) and *In re K.L. Smith Enterprises Ltd.*, 2 B.R. 280, 5 B.C.D. 1267 (Bankr.D.Colo.1980) ("if eggs are products of 'livestock', the hens themselves must be 'livestock' .... There does at least seem to be a biological connection"). Under certain ·circumstances, chickens and eggs could not or would not be considered farm products, *i.e.*, when they are in the hands of a grocer or a marketer. But, common sense, and a correct reading of the statute, would dictate that chickens and eggs in the hands of a person or entity that raises and produces them, regardless of the fact that the goods will ultimately be sold, are farm products and not inventory. The definitions under § 9–109 are mutually exclusive so that the chickens and eggs cannot be both inventory and farm products as to the Bank. *See In re Houts, supra* and M.G.L. ch. 106, § 9–109, Official Comment 2. This Court accordingly holds that for the purposes of these proceedings, the debtor being engaged in farming operations, the chickens and eggs are farm products and are not inventory. Since neither the security agreement of the Bank nor the financing statement filed by the Bank lists farm products as collateral, the Bank does not have a security interest in the chickens and eggs.[1]

---

**1.** While it may be argued that M.G.L. ch. 106, § 9–109 controls for the purposes of determining the proper place to file financing statements, and § 9–110 and § 9–402(2)(a) actually govern

what a security agreement covers, *see, e.g., In re Laminated Veneers Co.*, 471 F.2d 1124 (2d Cir. 1973), the Bank failed to raise this argument.

II. The Bank does not have a security interest in the post-petition accounts receivable of the debtor.

On August 27, 1981, after hearing and with the consent of the Bank, the Court permitted the debtor to use its accounts receivable, the Bank's cash collateral, in the operation of its business. The Bank asserts that this order gave the Bank a security interest in the debtor's post-petition accounts receivable. In its trial brief, the Bank states that its consent to the debtor's use of funds generated by pre-petition accounts receivable was conditioned upon the substitution of post-petition accounts receivable for the cash collateral which was to be used. The debtor denies the existence of such a condition and asserts that the Bank does not have a security interest in its post-petition accounts receivable. The order itself is devoid of any language granting the Bank a replacement lien on any post-petition assets.

 Under the Bankruptcy Code, an after-acquired property clause in a pre-petition security agreement is abrogated upon the filing of a petition. 11 U.S.C. § 552(a) and *In re Trans-Texas Petroleum Corp.,* 33 B.R. 67 (Bankr.N.D.Tex.1983). Proceeds of collateral are excepted from this limitation, but only to the extent that the collateral was in existence prior to the filing of the petition. 11 U.S.C. § 552(b); *Matter of Gross-Feibel Co.,* 21 B.R. 648, 9 B.C.D. 307 (Bankr.S.D.Ohio 1982); and *Matter of Sigma-4 Express, Inc.,* 31 B.R. 5 (Bankr.W.D.Pa.1983). The Bank's claim does not fall within this exception, since the Bank does not have a right to proceeds arising from the sale of what is not the Bank's (pre-petition) collateral. *See supra,* ¶ I. Absent evidence of a Court order granting the Bank a replacement lien on post-petition accounts receivable, the Bank is unable to sustain its claim that it has a security interest in the debtor's post-petition accounts receivable. *See generally* 4 Collier on Bankruptcy ¶ 552.02 (15th ed. 1982). Contrary to the Bank's assertions, the Court's order of August 27, 1981, does not contain any provision granting the Bank a security interest in the debtor's post-petition accounts receivable. The Bank's argument that its consent to the use of pre-petition accounts receivable was conditioned upon the substitution of post-petition accounts receivable is without merit since there has been no evidence introduced which establishes the existence of such an agreement between the parties, and since the order itself fails to contain any such language.

 The Bank also argues that the Code permits the Court to condition the debtor's use of cash collateral by providing adequate protection to the secured party, and asks this Court to grant the Bank adequate protection in the form of a substitute lien on post-petition accounts receivable for pre-petition accounts receivable. The Bank is correct in its assertion that the Court may order adequate protection to a secured party in exchange for the debtor's right to use secured property. 11 U.S.C. § 363(e). It is not an automatic power of the Court, however, but one which is exercised on request of an entity that has an interest in the property sought to be used. The creditor whose cash collateral is being used has a right to demand adequate protection, *In re Lovelady,* 21 B.R. 182 (Bankr.D.Or.1982), but the court's discretionary power to provide such protection arises only when the creditor requests same. 11 U.S.C. § 363(e); *In re Gas Light Village, Inc.,* 6 B.R. 871 (Bankr.D.Conn. 1980); *see generally* 2 Collier on Bankruptcy ¶ 363 (15th ed. 1982). The providing of adequate protection to the secured party is not a prerequisite to the debtor obtaining permission to use cash collateral. The Bankruptcy Code provides that the debtor, after notice and a hearing and with the consent of the creditor, may use cash collateral. 11 U.S.C. 363(c). There is no requirement of adequate protection. As stated above, if a creditor desires adequate protection it must request it. Here, the Bank did not request adequate protection prior to the Court having allowed the debtor to use the funds generated by prepetition accounts receivable. A creditor may

ask for adequate protection at any time, but the time frame considered is that of any time up to and including the Court's order allowing the use of the secured property, and not after such order has been entered. *See* 2 Collier on Bankruptcy ¶ 363.06 (15th ed. 1982).

■■■■ The purpose of adequate protection is to provide a secured creditor the benefit of its bargain while enabling a debtor to use secured property. 11 U.S.C. § 361; *see also* H.R.Rep. No. 595, 95th Cong., 1st Sess. 338–40 (1977), U.S. Code Cong. & Admin. News 1978, 5787. It is not intended as an "after the fact" method allowing a creditor to obtain the full amount of its secured claim. The Bank is asking this Court to do now what the Bank should have done at the time of the hearing on the debtor's application to use cash collateral. This, the Court will not do. Therefore, since the post-petition accounts receivable were not the proceeds of pre-petition collateral (by virtue of the Court's conclusions set forth in ¶ 1 *supra*) and were not substituted by this Court for the pre-petition accounts receivable used by the debtor as adequate protection to the Bank, the Court further finds that the Bank does not have a security interest in the post-petition accounts receivable, and therefore, is not entitled to claim such accounts receivable.

III. The FmHA is entitled to recover the proceeds of the sale of the flock of chickens, subject to the trustee's costs and expenses incurred in maintaining the chickens prior to their sale.

The FmHA filed a complaint seeking reclamation of the proceeds derived from the sale of the flock of starcross shaver chickens.[2] The trustee denied the allegations of the FmHA and counterclaimed for costs and expenses incurred in maintaining and preserving the chickens prior to their sale.

■■■■ On July 19 and September 19, 1979, the FmHA executed a loan-security agreement with the debtor. The FmHA

obtained a security interest in, *inter alia*, the crops, equipment, farm products and livestock owned or acquired by the debtor, along with all increases, additions, substitutions or replacements. The proper financing statements were filed with the appropriate offices. The financing statements did not refer to after-acquired property. This, however, is immaterial, since provisions were made in the security agreement for after-acquired property. The purpose of a financing statement is merely to give notice of the existence of a secured transaction and, that further inquiry as to the particulars is prudent. It is not to set out the details of the transaction itself. *See, e.g., In re Laminated Veneers Co., supra; In re Bates*, 30 B.R. 273, 37 UCC Rep.Serv. 554 (Bankr.D.Md.1983); *In re Plad, Inc.*, 24 B.R. 676 (Bankr.M.D.Tenn.1982); and *National Cash Register Co., v. Firestone & Co.*, 346 Mass. 255, 191 N.E.2d 471 (1963). As the flock of starcross shaver chickens which was sold by the debtor, was in the possession of the debtor prior to the filing of its Chapter 11 petition, and since the FmHA has a security interest in the debtor's livestock and farm products, under 11 U.S.C. § 552(b) and M.G.L. ch. 106, §§ 9–101 *et seq.*, the FmHA's security interest continues in the proceeds of the sale of the flock of chickens. *Cf. supra*, ¶ I and ¶ II.

■■■■ The FmHA, however, does not have an unqualified right to all of the proceeds derived from the sale of the chickens. Under 11 U.S.C. § 506(c), the trustee "may recover from property securing an allowed secured claim the reasonable necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." The trustee has the burden of showing that the expenses were reasonable, necessary and for the benefit of the secured party. *See, e.g., In re Trim-X, Inc.*, 695 F.2d 296 (7th Cir.1982); *In re Korupp Associates, Inc.*, 30 B.R. 659 (Bankr.D.Me.1983); and

---

**2.** While technically the FmHA used the word "reclaim" in its complaint, it is obvious the FmHA is instead actually seeking relief from

stay to foreclose on its interest in the proceeds and this is how the Court is so treating the FmHA's complaint.

*Dozoryst v. First Financial Savings and Loan Association,* 21 B.R. 392 (Bankr.N.D. Ill.1982).

The trustee alleged in its counterclaim that he had incurred costs in preserving the chickens prior to their sale. The trustee did not, however, introduce any evidence as to the amount of the expenses incurred. The Court can assume that if the expenses were incurred to preserve the flock of chickens, they were for the benefit of the FmHA. But, the Court cannot rule on the necessity or reasonableness of the expenses unless and until further evidence regarding the nature and amount of the expenses is provided. To that end, the Court will allow the trustee the opportunity to provide the aforementioned information before ruling on the amount to which the FmHA is entitled. Therefore, the Court finds that the FmHA has a valid security interest in the proceeds of the sale of the flock of starcross shaver chickens and is entitled to recover such proceeds, subject to the debtor's claim for costs and expenses, the amount of which remains to be determined.

### ORDER

Accordingly, the following order shall enter.

1. The Rhode Island Hospital Trust National Bank's motion seeking to recover the proceeds from the sale of the chickens is DENIED.

2. The Farmers' Home Administration's complaint seeking to recover the proceeds from the sale of the chickens is ALLOWED, subject to ¶ 3, *infra.*

3. The trustee shall file an affidavit setting forth the expenses incurred in preserving the chickens prior to the sale, with a copy to all counsel, within ten days of today, after receipt of which the Court will supplement this order by fixing the claim of the Farmers Home Administration and the trustee's claim for costs incurred in preserving the chickens prior to their sale.

SO ORDERED.