### In re Billy HAWKINS.

### Bankruptcy No. E85–40107.

United States Bankruptcy Court,
N.D. Mississippi.

Dec. 30, 1985.

Craig M. Geno, Bennett, Lotterhos, Sulser & Geno, Jackson, Miss., for Billy Hawkins.

Robert P. Crutcher, Asst. U.S. Atty., Oxford, Miss., for Farmers Home Admin.

### OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration of the motion filed by the Debtor, Billy Hawkins, for authority to incur debt and grant security therefor; response to said motion filed by the United States of America for and on behalf of the Farmers Home Administration, hereinafter referred to as FmHA; all parties being represented by their respective attorneys of record; on the presentation of evidence and argument to the Court; and the Court having heard and considered same, hereby finds and adjudicates as follows, to-wit:

#### I.

The Court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A) and (D).

#### II.

Through his motion, the Debtor seeks authority to enter into a price support loan with the Commodity Credit Corporation in the approximate sum of $113,000.00, pledging as collateral his 1985 crops which for the most part have been harvested and stored. FmHA has objected to this proposed loan transaction contending that it holds a valid first lien against the 1985 cotton crop pursuant to three security agreements, dated April 2, 1981, May 13, 1983, and June 7, 1984, the lien resulting from the said security agreements being perfected by the filing of a Uniform Commercial Code financing statement with the

Chancery Clerk of Humphreys County, Mississippi, on April 2, 1981. The security agreements, by the language expressed therein, encumber the following:

Item 1. All crops, annual and perennial, and other plant products now planted, growing or grown, or which are hereafter planted or otherwise become growing crops or other plant products (a) within the one-year period or any longer period of years permissible under State law, or (b) at any time hereafter if no fixed maximum period is prescribed by State law, on the following real estate: ...

Each of the security agreements contains a future advances clause which is set forth as follows:

... to secure the prompt payment of all existing and future indebtedness and liabilities of debtor to secured party and of all renewals and extensions thereof and any additional loans or future advances ...

FmHA argues that its security interest extends to the Debtor's 1985 cotton crop, which was planted prepetition, by virtue of the interaction of 11 U.S.C. § 552(b), § 75–9–201, § 75–9–204, and § 75–9–403(2), Mississippi Code of 1972, as amended, all of which are set forth respectively hereinbelow:

11 U.S.C. § 552. Postpetition effect of security interest.

(a) Except as provided in subsection (b) of this section, property *acquired* by the estate or by the debtor *after* the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

(b) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity *entered into a security agreement before the commencement of the case and* if the security interest created by such security agreement extends to *property of the debtor acquired before the commencement of the case and to proceeds*, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law, except to any extent that the court, after notice and a hearing and based on the *equities of the case,* orders otherwise. [Emphasis supplied] § 75–9–201, Mississippi Code of 1972, as amended. General validity of security agreement.

Except as otherwise provided by this code a security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors. Nothing in this chapter validates any charge or practice illegal under any statute or regulation thereunder governing usury, small loans, retail installment sales, or the like, or extends the application of any such statute or regulation to any transaction not otherwise subject thereto. § 75–9–204, Mississippi Code of 1972, as amended. After-acquired property; future advances.

(1) *Except as provided in subsection (2), a security agreement may provide that any or all obligations covered by the security agreement are to be secured by after-acquired collateral.*

(2) No security interest attaches under an after-acquired property clause to consumer goods other than accessions (section 75–9–314) when given as additional security unless the debtor acquires rights in them within ten (10) days after the secured party gives value.

(3) Obligations covered by a security agreement may include future advances or other value whether or not the advances or value are given pursuant to commitment (section 75–9–105(1)). [Emphasis supplied] § 75–9–403(2), Mississippi Code of 1972, as amended.

(2) *Except as provided in subsection (6), a filed financing statement is effective for a period of five (5) years from*

*the date of filing.* The effectiveness of a filed financing statement lapses on the expiration of the five (5) year period unless a continuation statement is filed prior to the lapse. If a security interest perfected by filing exists at the time insolvency proceedings are commenced by or against the debtor, the security interest remains perfected until termination of the insolvency proceedings and thereafter for a period of sixty (60) days or until expiration of the five (5) year period, whichever occurs later. Upon lapse, the security interest becomes unperfected unless it is perfected without filing. If the security interest becomes unperfected upon lapse, it is deemed to have been unperfected as against a person who became a purchaser or lien creditor before lapse. [Emphasis supplied]

### III.

It is noted at this point that FmHA concedes that its lien does not reach the Debtor's 1985 soybean crop, which was planted postpetition, due to the effects of 11 U.S.C. § 552(a), quoted above. The Debtor does not contest the validity of the FmHA lien, and also does not seriously dispute that this lien reaches the proceeds of collateral acquired long after its perfection. The Debtor, however, argues that this Court should disallow the lien as a result of the "equities of the case" language appearing in 11 U.S.C. § 552(b). The Debtor also argues that he should be authorized to pay those creditors, designated hereinbelow, who enabled him to plant, maintain and harvest the 1985 cotton crop pursuant to 11 U.S.C. § 506(c), which provides as follows:

(c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

The creditors mentioned above, who provided production funds, supplies, services, etc., for the planting, maintaining, and harvesting the cotton crop are listed as follows:

| | | |
|---|---|---|
| Citizens Bank (Crop production loan) | $20,000.00 | + Int. |
| Scott Petroleum Corp. (Fertilizer) | 11,101.72 | |
| Auto Parts Co. (Parts) | 582.44 | |
| Sudduth Tractor Co. (Parts) | 1,560.43 | |
| James C. Simpson, Jr. (Entomologist) | 900.00 | |
| Superior Parts, Inc. (Parts) | 1,269.50 | |
| Mohamed's Auto Parts (Parts) | 32.66 | |
| Spencer Tire Service (Tires & Repairs) | 208.92 | |
| Delta Crop Insurance | 3,746.37 | |
| Belzoni Ag Supply (Chemicals) | 814.48 | |
| Joel B. Cunningham, C.P.A. | 1,698.50 | |
| Delta Picker Repair (Repairs) | 7,236.39 | |
| Planters Gin Co. (Ginning Cotton) | 2,180.00 | |
| Cash (Repay Sister & Son) | 7,100.00 | |
| Ray's Flying Service | 330.00 | |
| Filler-Up, Inc. (Gas & Oil) | 875.01 | |
| Gorton Clinic (Labor) | 69.00 | |
| Wood's Welding (Repairs) | 164.90 | |
| Wayne's Service Station (Gas & Oil) | 116.40 | |
| J.D. Bodry (Rent) | 5,300.00 | |
| J.D. Priestly Est. (Rent) | 2,500.00 | |
| James Duthu (Rent) | 5,000.00 | |
| Jean Kiker (Rent) | 3,000.00 | |
| Marion K. Robertson Trustee Est. (Rent) | 1,100.00 | |
| Kelly M. Robertson (Rent) | 1,100.00 | |
| Mrs. Orene Sumrall (Rent) | 1,100.00 | |
| TOTAL | $79,086.72 | |

### IV.

The Court is of the opinion that at this time the FmHA lien on the Debtor's 1985 cotton crop should not be disallowed completely because of the "equities of the case." The proof before the Court is insufficient to justify such potent relief.

Inasmuch as the proposed Commercial Credit Corporation loan transaction is actually in the nature of a crop price support, this Court is of the opinion that the Debtor should be permitted to enter into the loan transaction, subject to the disbursement of the proceeds as set forth hereinbelow.

Pursuant to the provisions of 11 U.S.C. § 506(c), those creditors designated hereinbelow, who would be considered as holding valid statutory liens against the crop, or who obtained a lien by order of this Court, should be paid by the Debtor from the

Commodity Credit Corporation loan proceeds, to-wit:

| | |
|---|---|
| Citizens Bank (Crop production loan) | $20,000.00 + Int. |
| Planters Gin Co. (Ginning Cotton) | 2,180.00 |
| J.D. Bodry (Rent) | 5,300.00 |
| J.D. Priestly Est. (Rent) | 2,500.00 |
| James Duthu (Rent) | 5,000.00 |
| Jean Kiker (Rent) | 3,000.00 |
| Marion K. Robertson Trustee Est. (Rent) | 1,100.00 |
| Kelly M. Robertson (Rent) | 1,100.00 |
| Mrs. Orene Sumrall (Rent) | 1,100.00 |
| TOTAL | $41,280.00 |

The amount of each of these claims was uncontradicted in the proof.

The balance of the loan proceeds should be deposited by the Debtor in an interest bearing escrow account to be disbursed on the subsequent order of this Court, following either the confirmation of the Debtor's plan of reorganization or after the consideration of whether any of the other creditors, listed in Paragraph III hereinabove, fall within the ambit of 11 U.S.C. § 506(c), or whether any of the creditors have perfected a lien against the crop which would be superior to that of FmHA, such as contemplated in § 75-9-312(2), Mississippi Code of 1972, as amended, which is set forth as follows:

A perfected security interest in crops for new value given to enable the debtor to produce the crops during the production season and given not more than three (3) months before the crops become growing crops by planting or otherwise takes priority over an earlier perfected security interest to the extent that such earlier interest secures obligations due more than six (6) months before the crops become growing crops by planting or otherwise, even though the person giving new value had knowledge of the earlier security interest.

As to these remaining creditors, the proof is simply insufficient to determine whether 11 U.S.C. § 506(c) or § 75-9-312(2), Mississippi Code of 1972, as amended, is applicable. See In Re: Northeast Chick Service, Inc., 43 B.R. 326 (Bkrtcy.D. Ma.—1984), cited by the Debtor, which held as follows:

The FmHA, however, does not have an unqualified right to all of the proceeds derived from the sale of the chickens. Under 11 U.S.C. § 506(c), the trustee 'may recover from property securing an allowed secured claim the reasonable necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.' The trustee has the burden of showing that the expenses were reasonable, necessary and for the benefit of the secured party. See, e.g., In re Trim-X, Inc., 695 F.2d 296 (7th Cir.1982); In re Korupp Associates, Inc., 30 B.R. 659 (Bankr.D.Me.1983); and Dozoryst v. First Financial Savings and Loan Association, 21 B.R. 392 (Bankr.N.D.Ill. 1982).

The trustee alleged in its counterclaim that he had incurred costs in preserving the chickens prior to their sale. The trustee did not, however, introduce any evidence as to the amount of the expenses incurred. The Court can assume that if the expenses were incurred to preserve the flock of chickens, they were for the benefit of the FmHA. But, the Court cannot rule on the necessity or reasonableness of the expenses unless and until further evidence regarding the nature and amount of the expenses is provided. To that end, the Court will allow the trustee the opportunity to provide the aforementioned information before ruling on the amount to which the FmHA is entitled. Therefore, the Court finds that the FmHA has a valid security interest in the proceeds of the sale of the flock of starcross shaver chickens and is entitled to recover such proceeds, subject to the debtor's claim for costs and expenses, the amount of which remains to be determined.

Id. at 332-33.

An Order will be entered consistent with this Opinion.