In the Matter of Alvin E. SEKUTERA and Claudette C. Sekutera, Debtors.

Alvin E. SEKUTERA and Claudette C. Sekutera, Plaintiffs,

v.

MASON STATE BANK, Mason City, Nebraska, Defendant.

Bankruptcy No. BK85–1208.
Adv. No. A85–279.

United States Bankruptcy Court,
D. Nebraska.

June 12, 1986.

John S. Mingus of Mingus & Mingus, Ravenna, Neb., for plaintiffs/debtors.

Douglas E. Quinn of McGrath, North, O'Malley & Kratz, P.C., Omaha, Neb., for Mason State Bank.

## MEMORANDUM OPINION

TIMOTHY J. MAHONEY, Bankruptcy Judge.

This adversary proceeding concerning the extent and validity of a security interest was tried on April 22, 1986.

### Facts

1. Debtors filed a Chapter 11 petition on May 29, 1985. Debtors are farmers.

2. On or about February 7, 1979, debtors executed a combined financing statement security agreement granting a security interest in:

> " 'collateral', whether now owned or hereafter acquired by the debtor: all equipment, including but not limited to all farm equipment, tractors, machinery and implements, all farm products, including but not limited to crops, livestock, and supplies used or produced in farming operations; all contract rights and accounts; and additions, accessions and substitutions thereto; and all products and proceeds thereof."

Such security interest was granted in conjunction with debtor receiving one or more loans from the Bank.

3. On October 17, 1980, Alvin Sekutera, one of the debtors, signed a written guarantee requesting the Mason State Bank to give and continue to give credit to Joe Sekutera, son of Alvin Sekutera. The guarantee states that it guarantees prompt payment to said Bank, when due, of any and all notes at any time made by Joe Sekutera to said Bank and in any renewal or renewals thereof, together with all other indebtedness, either existing at the time of the guarantee or incurred thereafter by Joe Sekutera. The guarantee specifically provided that it would continue indefinitely until the Bank received written notice from Alvin Sekutera of the discontinuance of the guarantee.

On or about January 25, 1984, the Bank filed a continuation statement with the County Clerk of Sherman County, Nebraska, continuing the perfection of the security interest originally perfected by the financing statement filed February 7, 1979.

4. In November of 1984 Alvin Sekutera, individually, executed renewal notes in favor of the Mason State Bank in the amount of $49,936.38 and in the amount of $48,300. Each of these notes states on its face that "this note evidences a loan pursuant to and is entitled to the benefits of a security agreement dated January 25, 1984, executed by undersigned in favor of payee."

5. After Alvin Sekutera executed the guarantee in favor of the Bank guaranteeing his son's loans, the son did incur indebtedness with the Bank. Although there was some evidence presented that a bank officer told the son that the Bank no longer looked to Alvin Sekutera for payment of the son's notes, there is no written revocation of the guarantee. Alvin Sekutera did not specifically discuss obligation to the Bank concerning the son's debts, nor did he discuss the continuing liability of the guarantee until the Bank notified him that they intended to enforce its provisions.

6. Within 90 days of the bankruptcy filing, the Bank took possession of the 1984 harvested crop and sold it, applying the proceeds to the note balance.

*Issues*

1. Does a security interest in all of the debtor's property granted in 1979 and perfected in 1979, with a continuation statement filed on a timely basis in 1984, secure debts incurred by the debtors in 1984, even though the notes executed in 1984 refer specifically to a non-existent security agreement?

2. Does the Bank have a perfected security interest in irrigation equipment?

3. Is the debt incurred by Alvin Sekutera's son which was guaranteed by the father secured by the collateral in which the debtors granted a security interest to the Bank in 1979?

4. Does the Mason State Bank have a security interest in harvested corn even though the financing statement did not describe real estate upon which corn was to be grown?

*Decision*

1. The debts incurred in 1984 are secured by collateral in which the debtor was granted a security interest in 1979. The security interest continues in the collateral and, by its terms, secured future advances. The language on the 1984 notes referring to a document filed earlier in 1984, which was not a security agreement, is not effective and does not limit the liability of debtors under the 1979 security agreement.

2. The Bank does have a perfected security interest in the irrigation equipment per the 1979 perfected security interest and the 1984 continuation statement.

3. The collateral in which the debtors granted the Bank a security interest in 1979 also secures the obligation of Alvin for the debt of his son.

4. The Bank does have a security interest in the harvested corn because once a crop is harvested it is no longer a growing crop and the legal description of the field upon which it was grown is not significant.

*Discussion*

The security agreement executed in February of 1979 specifically provides that the security interest in all of debtor's property is to secure debtor's present and future indebtedness and all renewals and extensions of such indebtedness.

■ By its terms the security agreement provides a security interest in collateral securing all indebtedness of the debtor. The guarantee signed by Alvin Sekutera on October 17, 1980, is a promise to pay the debts of the son. It, therefore, is evidence of indebtedness of the father. All of the obligations of the son which were guaranteed by the father are secured by an interest in collateral granted in 1979.

■ Purported oral representation to the son that the Bank no longer would look to the father for any payment pursuant to the guarantee is not binding upon the Bank. It apparently was offered as a modification of the written guarantee. Such modification is not authorized by the document itself and this Court does not recognize an oral modification to the document which specifically states that it shall continue to be in force until and unless the Bank receives written notice from the guarantor of the discontinuance of the guarantee.

■ The Bank's interest in the collateral attached in 1979. Nebr. U.C.C. § 9–203 (1980). The security interest does not lapse because renewal notes executed several years later state on their face that they are secured by a security agreement dated January 25, 1984, when, in fact, the only document dated January 25, 1984, is a continuation statement. It does not matter that there is no security agreement dated January 25, 1984. There is a security agreement dated February 7, 1979, which was perfected and continued as perfected on January 25, 1984. That security agreement granted an interest in all of debtor's property to secure all of the debtor's debt, whether existing in 1979 or incurred thereafter. The perfection of that security interest did not lapse and it is, therefore, applicable to notes executed in 1984.

Nebr. U.C.C. § 9–402 requires a financing statement to describe the real estate upon which growing crops are located if the creditor desires to perfect a security interest in such growing crops. In this case, the financing statement filed in 1979 does not describe the real estate upon which crops are to be grown. As a result, the debtors claim that the Bank does not have a perfected security interest in harvested crops. Therefore, claim the debtors, the Bank has no right to take possession of harvested crops and the proceeds of the sale of such crops should be returned to the debtors as property of the estate. The problem here results from the inherent lack of specific definitions in the Uniform Commercial Code. U.C.C. § 9–109 defines goods. Included in the definition is a definition of farm products. According to U.C.C. § 9–109(3):

"goods are farm products if they are crops or livestock or supplies used or produced in farming operations or if they are products of crops or livestock in their unmanufactured states (such as ginned cotton, wool-clip, maple syrup, milk and eggs) and if they in the possession of a debtor engaged in raising, fattening, grazing or farming operations. If goods are farm products they are neither equipment nor inventory.

The term "crops" is broad enough to cover harvested crops. Harvested crops could also be considered a product of a crop. See: *"Crops" as Collateral for an Article 9 Security Interest and Related Problems, Meyer*, Vol. 15, No. 1, Summer 1982, Uniform Commercial Code Law Journal.

In *Genoa National Bank v. Sorenson*, 208 Neb. 423, 304 N.W.2d 659 (1981), the Nebraska Supreme Court has addressed this issue in terms of failure by a bank to file a financing statement in two offices when the financing statement referred to growing crops. Previous perfection requirements included the obligation to file the financing statement locally and with the Public Service Commission. The Court determined that a judgment creditor whose judgment lien did not attach until after the crop was harvested did not take priority over the bank's security interest which, although unperfected in growing crops, became perfected once the crops were harvested. The local dual filing requirement applied only to growing crops and not harvested crops.

■ In this case, as between the Bank and the debtor, prepetition, there existed a security interest in growing crops, which was valid and binding between the parties although unperfected. Neb. U.C.C. § 9–201. The growing crops were then harvested and became farm products or products of crops and the Bank had a perfected security interest in such farm products.

*Genoa National Bank v. Sorenson, supra.*

█ The Bank took possession of the farm products and sold them within 90 days of the bankruptcy filing. Debtor claims such a sale and acceptance of the proceeds was a preference which it can set aside under 11 U.S.C. § 544 and § 547. This Court does not agree. The Bank had a perfected security interest in the harvested crops and its sale of such crops and application of the proceeds, as a secured creditor, is not a preference. 11 U.S.C. § 547(b)(5).

Separate journal entry to follow.