GENOA NATIONAL BANK, GENOA, NEBRASKA,
APPELLEE AND CROSS-APPELLEE, V.
JOHN D. SORENSEN, APPELLEE,
JAMES FICHTL, JR., INTERVENOR-APPELLANT
AND CROSS-APPELLEE,
ROY E. NELSON AND ANNE NELSON,
INTERVENORS-APPELLEES AND CROSS-APPELLANTS.

304 N.W.2d 659

Filed March 27, 1981.  No. 43122.

Donn K. Bieber of Otradovsky & Bieber for appellant Fichtl.

Edward Asche for cross-appellants Nelson.

Donald R. Treadway of Brower, Treadway & Bird, P.C., for appellee Bank.

No appearance for appellee Sorensen.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C.J.

This appeal presents to the court what appears to be a case of first impression under the provisions of Neb. U.C.C. art. 9 (Reissue 1971). The District Court, after trial, determined that the Genoa National Bank (bank) as judgment creditor of John D. Sorensen (Sorensen), had

a superior lien on certain harvested crops owned by Sorensen and then being held at the Farmers Union Cooperative Association at Richland, Nebraska, over the security liens of the appellant, James Fichtl, Jr. (Fichtl), and the security interest of the appellants, Roy E. Nelson and Anne Nelson (Nelson), even though the Fichtl lien and the Nelson lien were acquired prior in time to the judgment lien. We believe that the Uniform Commercial Code requires a contrary conclusion and that the decision of the trial court must be reversed.

On September 12, 1977, Sorensen executed and delivered to Fichtl a security agreement and financing statement covering growing crops on certain land leased by Sorensen. A copy of the financing statement was filed in the office of the clerk of Colfax County on September 14, 1977, but not until November 3, 1978, was it filed with the Public Service Commission as required by the provisions of Neb. U.C.C. § 9-401 (1) (a) (Cum. Supp. 1978) which became effective on September 2, 1977.

Further, the record reflects that on September 22, 1977, Sorensen made, executed, and delivered to Nelson a security instrument and financing statement, also covering crops growing on land leased by Sorensen. Nelson's financing statement was filed on September 22, 1977, in the office of the clerk of Colfax County, Nebraska. It was not filed with the Public Service Commission, as required by the provisions of § 9-401(1)(a), until November 17, 1978.

On October 21, 1977, the crops covered by the security documents were all harvested and taken from the fields to an elevator at Richland, Nebraska, where they were held in the fall of 1978.

On October 11, 1978, the appellee bank obtained a judgment against Sorensen based upon promissory notes executed by Sorensen; and on October 19, 1978, the bank caused the sheriff to levy execution, attaching the grain in the Richland elevator. Both Fichtl and Nelson intervened in the action brought by the bank

against Sorensen for the purpose of having their liens declared prior and superior to that of the judgment creditor.

The bank argued and the trial court agreed that the liens of Fichtl and Nelson were inferior to the judgment lien of the bank because Fichtl and Nelson had failed to file their financing statements with the Public Service Commission in accordance with the provisions of § 9-401(1)(a). We believe that in that respect the bank is in error.

While there appears to be no specific statutory provision contained within the Uniform Commercial Code nor any specific case directly on point, we believe that the language of the code requires us to find that the liens of Fichtl and Nelson were perfected prior to the bank acquiring its judgment lien and, therefore, prior and superior to the lien of the bank.

Though no longer the law (see Neb. U.C.C. § 9-401 (Cum. Supp. 1980)), at the time relevant to this action, § 9-401 provided in part as follows: "(1) The proper place to file in order to perfect a security interest is as follows: (a) When the collateral is *unharvested crops*, then in the office of the county clerk in the county where the land, on which the crops are growing or are to be planted and grown, is located, and in the office of the Public Service Commission, where a duplicate copy shall be filed and indexed as a crop lien. There shall be no filing fee or charge for the filing of a duplicate. . . . (c) When the collateral is any other type of tangible or intangible personal property, the following rules apply: When the debtor is a resident of this state, then in the office of the county clerk in the county of the debtor's residence." (Emphasis supplied.) The language of the statute indicates that if crops are "unharvested," then a filing must be made in both the office of the county clerk and the Public Service Commission. On the other hand, if the crops are *harvested*, then no duplicate filing need be made in the office of the Public Service Commission and the filing of a financing statement in

the office of the county clerk alone is sufficient.

Likewise, the act makes further provisions concerning when a lien attaches. Neb. U.C.C. § 9-303 (Reissue 1971) provides in part as follows: "(1) A security interest is perfected when it has attached and when all of the applicable steps required for perfection have been taken. Such steps are specified in sections 9-302, 9-304, 9-305 and 9-306. *If such steps are taken before the security interest attaches, it is perfected at the time when it attaches.*" (Emphasis supplied.)

Neb. U.C.C. § 9-402 (Reissue 1971) provides in part: "(1) . . . A financing statement may be filed before a security agreement is made or a security interest otherwise attaches."

Neb. U.C.C. § 9-402 (Reissue 1971) provides in part: in part as follows: "(1) except as otherwise provided in subsection (2), an unperfected security interest is subordinate to the rights of . . . (b) a person who becomes a lien creditor . . . *before* [the security interest] is *perfected* . . . ." (Emphasis supplied.) Subsection (2) has no application to the case at bar.

Section 9-401(2) further provides as follows: "A filing which is made in good faith in an improper place or not in all of the places required by this section is nevertheless effective with regard to any collateral as *to which the filing complied with the requirements of this article* . . . ." (Emphasis supplied.)

The evidence is clear beyond contradiction that had the crops remained "unharvested" until such time as the judgment creditor had obtained its judgment and levied execution, it would clearly have priority over the security creditors who had failed to file their financing statements in both the offices of the county clerk and the Public Service Commission. But that is not the fact with which we are presented. In this case, long before the judgment creditor acquired any interest upon which levy could be executed, the crops were harvested and taken to an elevator. In essence, the bank urges us to find that if a filing is improperly made at the outset,

it may never be corrected or made valid. We do not believe that to be either a proper reading of the code or its intended purpose.

In *North Platte State Bank v. Production Credit Assn.*, 189 Neb. 44, 55-56, 200 N.W.2d 1, 8 (1972), we said: "'The fundamental purpose of Art. 9 of the code is to make the process of perfecting a security interest easy, simple, and certain. It was intended to be a complete reversal of prior chattel security law and to rid the unaware of the traps of requirement of specific types of acknowledgements, technical affidavits of consideration, selection of specific proper forms, and other pitfalls that were not uncommon. The code very simply and briefly provides for a notice-filing procedure with a minimum of information required to be publicized in a filed financing statement. All that is required is a minimal description, and it may be by type or kind. The statement need not necessarily contain detail as to collateral, nor any statement of quantity, size, description or specifications, or serial numbers. *No preciseness is required with respect to whether the collateral exists at the time of filing or is to be acquired thereafter,* and no statement of charges, payment schedule, or maturity date need be included in the statement. The first to file shall prevail.'" (Emphasis supplied.) Furthermore, in *Putnam Ranches, Inc. v. Corkle*, 189 Neb. 533, 535, 203 N.W.2d 502, 503 (1973), we said: "Courts are to construe and apply the Uniform Commercial Code liberally to promote its underlying purposes and policies."

Obviously, the purpose of filing is to give constructive notice to the world and actual notice to those who would take the trouble to look. If at any time after October 21, 1977, the date on which the crops were harvested, and October 11, 1978, the date on which the bank acquired its judgment lien, Fichtl or Nelson wished to take further action to perfect their liens upon harvested crops, they would have been required to simply refile their financing statement in the office of the county clerk where it was already on file. Because the crops

were then harvested, the provisions of § 9-401(1)(a) were no longer applicable. In essence, what we are saying if we accept the bank's position is that even though there was a financing statement on file in the office of the county clerk prior to the time that the bank acquired its judgment and levied execution, and was proper in all respects as to harvested crops, we should ignore that financing statement because the security holders did not have a second stamp placed upon the document after the crops were harvested. We believe that to make such a requirement would be to simply ignore the realities of life and the intent and purpose of the Uniform Commercial Code.

We have already noted that one may file a security instrument in advance of acquiring an interest in property, the interest attaching when all the requirements have been met. We see no reason, therefore, why we may not hold, at a minimum, that we may consider Fichtl's and Nelson's filings to have been made in advance of their acquiring their interest in the harvested crops and attaching at such time as the crops were harvested, thereby eliminating the requirement of a duplicate filing.

The code makes it clear that if the filing was properly perfected when made, a change in status will not deprive the holder of its lien interest. See § 9-401 (3). The code, likewise, provides that a financing statement may be filed before the security interest attaches. § 9-402 (1). We, likewise, see no reason for not holding that where a lien interest satisfies all the requirements of the code with regard to a particular type of property before any other intervening interest attaches, it should be recognized even though not proper when filed. We therefore believe the better rule, and the one supported both by the language of the Uniform Commercial Code and logic, requires us to hold that if an otherwise unperfected lien is not filed at all the proper places at the time of filing, but through the passage of time or change in character of the property becomes a proper

filing under the provisions of the Uniform Commercial Code, the lien also becomes properly perfected and has superior rights over all other liens not otherwise perfected prior to the time that the previous security lien was perfected.

We therefore believe that the decision of the trial court must be reversed and the action remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.