ALBION NATIONAL BANK OF ALBION, NEBRASKA, A NATIONAL
BANKING CORPORATION, APPELLEE, V. FARMERS COOPERATIVE
ASSOCIATION OF ST. EDWARD, NEBRASKA, APPELLANT.
422 N.W.2d 86

Filed April 15, 1988.   No. 86-637.

Rodney W. Smith, for appellant.

Larry D. Bird of Treadway, Bird & Albin, P.C., for appellee.

BOSLAUGH, CAPORALE, SHANAHAN, and GRANT, JJ., and
BURKHARD, D.J.

CAPORALE, J.

Defendant, Farmers Cooperative Association of St.
Edward, Nebraska, appeals from the judgment entered in favor

of plaintiff-appellee, Albion National Bank of Albion, Nebraska, asserting that the district court erred in finding that the bank had a security interest in and thus a superior right to the proceeds of certain corn delivered to the cooperative by the bank's debtor. We affirm.

Thomas A. Shotkoski and his wife, Veronica, were the operators of a multicounty farm operation. The bank advanced funds to the Shotkoskis for the 1984 crop-year which the Shotkoskis used to pay expenses for their entire operation, including those associated with lands located in Platte and Boone Counties.

The 1984 corn in question was grown by the Shotkoskis in Platte County. After it was harvested, it was transported to, dried, and stored in Boone County. The Shotkoskis thereafter, on February 19, 1985, delivered this corn to the cooperative, in exchange for which the cooperative credited $10,120 against the Shotkoskis' outstanding debt there.

The parties stipulated that at no time did the bank perfect a security interest in the corn by filing any documents in Platte County. The record is clear, however, that the bank held a continuously perfected security interest in the Shotkoskis' farm products in Boone County from August 24, 1981, through the date on which the corn in question was delivered to the cooperative, and thereafter.

We note at the outset that the cooperative does not allege a competing security interest in the subject corn under Neb. U.C.C. § 9-312(2) (Reissue 1980). Rather, the cooperative argues, in essence, that the bank had no security interest in the corn and therefore is not entitled to the proceeds realized from its sale to the cooperative.

Though no longer the law (see Neb. U.C.C. § 9-401 (Cum. Supp. 1986)), at the time relevant to this action, prior to September 1, 1981, § 9-401 provided in part as follows:

(1) The proper place to file in order to perfect a security interest is as follows:

(a) When the collateral is unharvested crops, then in the office of the county clerk in the county where the land, on which the crops are growing or are to be planted and grown, is located, and in the office of the Public Service

Commission, where a duplicate copy shall be filed and indexed as a crop lien. There shall be no filing fee or charge for the filing of a duplicate. . . .

. . . .

(c) When the collateral is any other type of tangible or intangible personal property, the following rules apply: When the debtor is a resident of this state, then in the office of the county clerk in the county of the debtor's residence.

§ 9-401 (Reissue 1980). Clearly, "farm products" are within the meaning of the phrase "other . . . tangible or intangible personal property." *Genoa Nat. Bank v. Sorensen*, 208 Neb. 423, 304 N.W.2d 659 (1981). See, also, *Matter of Sekutera*, 62 Bankr. 387 (Bankr. D. Neb. 1986).

Neb. U.C.C. § 9-109 (Reissue 1980) defines "farm products" as

crops or livestock or supplies used or produced in farming operations or . . . products of crops or livestock in their unmanufactured states (such as ginned cotton, wool-clip, maple syrup, milk and eggs), and . . . in the possession of a debtor engaged in raising, fattening, grazing or other farming operations. If goods are farm products they are neither equipment nor inventory.

Comment 4 to § 9-109 points out:

Products of crops or livestock remain farm products so long as they are in the possession of a debtor engaged in farming operations and have not been subjected to a manufacturing process. . . .

. . . .

Products of crops or livestock, even though they remain in the possession of a person engaged in farming operations, lose their status as farm products if they are subjected to a manufacturing process. What is and what is not a manufacturing operation is not determined by this Article. At one end of the scale some processes are so closely connected with farming—such as pasteurizing milk or boiling sap to produce maple syrup or maple sugar—that they would not rank as manufacturing. On the other hand an extensive canning operation would be

> manufacturing. The line is one for the courts to draw. After farm products have been subjected to a manufacturing operation, they become inventory if held for sale.

Drying corn, while certainly an act of processing, is not a manufacturing process as that term is understood within the context of article 9 of the Uniform Commercial Code. The corn in question, therefore, constituted a "farm product" while dried and stored on the Shotkoskis' land in Boone County.

The cooperative's difficulty with the result in the court below seems to be an unwillingness to accept the notion that under article 9 of the Uniform Commercial Code, goods can change character from one class of collateral to another as circumstances change; as this change in character occurs, goods which had previously fallen outside the scope of a perfected security interest in a certain class of collateral may come within the scope of that security interest, and goods previously within the scope of such a security interest may fall outside it. *Genoa Nat. Bank v. Sorensen, supra,* illustrates this principle. At the time of its decision, a security interest in "unharvested crops" was perfected by filing the appropriate documents in both the county where the crops were growing or to be grown and with the state Public Service Commission, § 9-401 (Cum. Supp. 1978); to perfect a security interest in " 'any other type of tangible or intangible personal property,' " the statute required filing in the debtor's county of residence only. *Genoa Nat. Bank, supra* at 425, 304 N.W.2d at 661. Sorensen had given Fichtl and Nelson secured interests in crops then growing on Sorensen's land; Fichtl and Nelson had filed their financing statements in the county but not with the Public Service Commission. After Fichtl and Nelson had made their county filings, and after the crops had been harvested and stored in an elevator, Genoa National Bank acquired a judgment lien against Sorensen and thereafter levied on the crop in the elevator. This court held that although Fichtl and Nelson had not perfected their interests in the growing crop in time by filing both in the county and with the Public Service Commission, they had timely perfected their interests with respect to the crop in the elevator; once harvested, the crop was no longer

"growing crops" but, rather, had changed character and become another "type of tangible . . . personal property," as to which filing in the county only had perfected Fichtl's and Nelson's security interests. The *Genoa Nat. Bank* court noted that Neb. U.C.C. § 9-303 (Reissue 1980) provided, as it does now, that

> "(1) A security interest is perfected when it has attached and when all of the applicable steps required for perfection have been taken. Such steps are specified in sections 9-302, 9-304, 9-305 and 9-306. *If such steps are taken before the security interest attaches, it is perfected at the time when it attaches.*"

(Emphasis in original.) *Genoa Nat. Bank v. Sorensen*, 208 Neb. 423, 426, 304 N.W.2d 659, 661 (1981). See, also, § 9-303. In sum, where the filing requirements for perfection of security interests under the Uniform Commercial Code differ depending upon the character of the collateral, and where the filing requirements are not met regarding one character of collateral but are met regarding another character of collateral, a security interest in the collateral is perfected as of the time the collateral changes character from that as to which filing requirements were not met to that as to which filing requirements were met.

Once harvested, transported to Boone County, and dried, the corn in question here was no longer a growing crop in Platte County, but had become a farm product in Boone County, as to which the bank had previously perfected a security interest. We need not determine the precise moment when the change in character of the Shotkoskis' corn from growing crop to farm product occurred; it is sufficient to note that well before the corn was transported to the cooperative, it had been moved to Boone County, had been processed by the Shotkoskis there, and had become a farm product subject to the bank's perfected security interest in the same. *Genoa Nat. Bank v. Sorensen, supra.* In other words, if an otherwise unperfected security interest in collateral of a certain character is not filed at all places required by the Uniform Commercial Code, but is filed at all places required by the code regarding another character of collateral, and the collateral later changes character and

becomes that as to which filing meets the requirements of the code, the security interest becomes perfected when the change in character occurs, and the security interest thus perfected has rights superior to all other liens not perfected prior to the time the change in character occurred.

The cooperative argues that at times relevant to this case, Neb. U.C.C. § 9-402(1) (Reissue 1980) provided in part: "When the financing statement covers crops growing or to be grown, the statement must also contain a description of the real estate concerned." The bank's financing statements did not contain a description of the land in Platte County, and, therefore, according to the cooperative, the bank's secured interest, if any, in "crops growing or to be grown" in Platte County was not perfected. In this the cooperative may be correct, a matter we need not and therefore do not decide, for the cooperative overlooks the fact that the bank had a perfected security interest in farm products in Boone County; the Boone County land was at all relevant times adequately described in financing statements on file in that county; and by the time the Shotkoskis delivered the corn to the cooperative, that which had once been "crops growing or to be grown" in Platte County had become "farm products" in Boone County by virtue of having been dried and stored there. Under § 9-401(1)(a), the bank had a properly perfected security interest in the Shotkoskis' Boone County farm products.

Since the judgment of the district court is correct, it is affirmed.

AFFIRMED.