LONE OAK FARM CORPORATION, A NEBRASKA CORPORATION, APPELLEE, V. RIVERSIDE FERTILIZER CO., A NEBRASKA CORPORATION, APPELLANT.

428 N.W.2d 175

Filed August 19, 1988.   No. 86-990.

William A. Francis, of Cunningham, Blackburn, Livingston, Francis, Cote, Brock & Cunningham, for appellant.

Michael L. Johnson, of Luebs, Dowding, Beltzer, Leininger, Smith & Busick, for appellee.

BOSLAUGH, WHITE, and SHANAHAN, JJ., and SPRAGUE and THOMPSON, D. JJ.

WHITE, J.

The plaintiff, Lone Oak Farm Corporation, brought this action to impose a constructive trust on crops, or the proceeds thereof, received by Riverside Fertilizer Co. (Riverside) allegedly in breach of a subordination agreement between the plaintiff and the defendant. The district court ruled that the subordination agreement entered into between the parties was clear and unambiguous, was controlling over the priority provisions of the Nebraska Uniform Commercial Code, and imposed a constructive trust on proceeds of crops held by the defendant in favor of the plaintiff. Riverside appeals. We affirm in part and reverse in part.

On March 19, 1984, Lone Oak Farm Corporation (landlord) leased two tracts of land to Dennis L. Land (tenant). The first tract was leased in exchange for 6,500 bushels of corn or, at the landlord's option, $20,000. The second tract was leased in exchange for 50 percent of the total crop yield. It was the tenant's responsibility to deliver the grain to the market of the landlord's choice. In addition, the landlord was to receive $3,850 from the proceeds of an insurance settlement for damage to a wheat crop. Sometime near the end of November or early December of 1984, the landlord notified the tenant that it elected to receive $20,000 for rent on tract 1. The lease further provided that the landlord was to file a security agreement covering the crops in the appropriate place and manner; however, no such security agreement was filed.

On March 21, 1984, the tenant entered into an agreement with appellant, Riverside, for the sale of goods and services necessary to produce the crops on the two tracts. On March 30 Riverside filed a financing statement and security agreement covering all crops and proceeds of crops to be grown on the subject property, and also covering crop insurance proceeds. The security agreement named the tenant and his wife as debtors. Riverside ultimately provided fuel, fertilizer, chemicals, and services to the tenant in the amount of $27,495.77.

On April 14 Riverside and the landlord entered into a subordination agreement. If the crops or crop proceeds due the tenant were not sufficient to pay the advances made by

Riverside, then the landlord was to be responsible for up to $7,000 in charges for fertilizer and chemicals used upon its ground. The subordination agreement acknowledged that the landlord had a "lien or interest" in the amount of crops or proceeds set forth in the lease. The agreement was subject to the limitation that it "shall be in effect from the period of April 1, 1984 until December 1, 1984 after which eight month period previously described, no valid claim shall be made against the [landlord]."

Riverside became involved with the harvest on tract 1, apparently at the tenant's request. No one representing the landlord was present during the harvest. A representative of Riverside testified that Riverside hauled only one of every three loads of corn from tract 1 to the elevator. Neither party was able to establish conclusively what became of the rest of the corn. The tenant filed for bankruptcy prior to the trial and was not called as a witness. The record indicates that on November 1 and 2 of 1984 approximately 8,750 bushels of corn were delivered to Boilesen Grain Company from tract 1. Several days later approximately 757 bushels of beans were delivered to another grain company from tract 2. On December 13 Riverside credited the tenant's account in the amount of $27,030.05, representing corn from tract 1 and beans and crop insurance from tract 2. At the time of this lawsuit the landlord had received no crops, proceeds, or insurance money from the two tracts.

The trial court held that the landlord was not indebted to Riverside under the subordination agreement, because by its terms it had expired. The trial court further ruled that by stating in the subordination contract "no valid claim shall be made against the [landlord]" after December 1, 1984, the parties agreed that after such date Riverside's interest became subordinate to the landlord's interest. The court awarded to the plaintiff those amounts due under the lease, that is, $20,000 of the proceeds from tract 1, half of the crop proceeds ($265.42) from tract 2, and $3,850 of insurance proceeds, or a total of $24,115.42.

Riverside contends that the trial court erred (1) in failing to grant its motion for directed verdict at the close of the

landlord's case; (2) in finding that the subordination agreement was not ambiguous; (3) in finding that its written agreement to provide materials and services to the landlord's tenant was not relevant and refusing to admit the same in evidence; and (4) in that the decision of the trial court was not sustained by sufficient evidence because the landlord had not perfected a lien in the crop as required by Neb. U.C.C. § 9-401 (Cum. Supp. 1984).

An action for constructive trust is one in equity and is reviewed de novo on the record in this court. *Knoell v. Huff*, 224 Neb. 90, 395 N.W.2d 749 (1986); Neb. Rev. Stat. § 25-1925 (Reissue 1985). The burden is on the party seeking to establish a constructive trust to do so by evidence which is clear, satisfactory, and convincing in character. *Knoell v. Huff, supra.*

The appellant's first assignment appears to be directed only at the dispute over the corn from tract 1. The appellant asserts that "[a]t the time of [the landlord's] rest, the record did not substantiate the fact that the grain delivered to Boilesen Elevator was grown on the [landlord's] land, or that [the landlord] had any interest in the same." Brief for appellant at 12. The fact that this grain came from tract 1 of the landlord's land was stipulated to before the trial began. Riverside's real argument here seems to be that the landlord failed to establish an interest in the crop because it was unable to establish how much corn was harvested from tract 1. Riverside asserts that the proceeds from 8,750 bushels of corn it received came from the tenant's share of the crop and not the landlord's share.

Riverside's assertion necessitates a discussion of the law in Nebraska relating to this subject. The rule in this state is that where land is leased and rent is to be paid by a share or specified amount of the crops to be raised, the landlord and tenant are tenants or owners in common of the growing crops until such time that the crop is harvested and divided. *Anest v. Chester B. Brown Co.*, 169 Neb. 330, 99 N.W.2d 615 (1959); *Chalupa v. Tri-State Land Co.*, 92 Neb. 477, 138 N.W. 603 (1912). The tenant may mortgage or sell his interest in the crops, but his mortgagee is charged with notice of the landlord's interest. The tenant's interest is determined by the terms of the lease, and his mortgagee can take no greater interest in the crop as against the

landlord than could be asserted by the tenant himself. *Yates v. Kinney*, 19 Neb. 275, 27 N.W. 132 (1886).

If, on the other hand, the lease is on a cash rent basis, the cotenancy relationship does not exist. In this situation the landlord's only recourse in the crops would be through an agreement with the tenant to give a security interest in the crops. See, *Todsen v. Runge*, 211 Neb. 226, 318 N.W.2d 88 (1982); *Oleson v. Pumphrey*, 125 Neb. 708, 251 N.W. 828 (1933).

The lease in this case called for rent in either corn or cash at the landlord's option on tract 1. We find no Nebraska case law which attempts to define the landlord's and tenant's relationship with respect to the growing crops in this situation. However, a judicial resolution of this issue is unnecessary on the facts of this case. When the landlord exercised its option to collect cash instead of the crop share, it gave up any ownership interest it might have had in the corn. At this point the corn belonged to the tenant. Thus, the landlord failed to prove an *ownership* interest in the corn, but not for the reason asserted by the appellant. The consequence of this determination will be discussed with the remaining assignments of error.

As to the second assignment, appellant contends that the entire subordination agreement is ambiguous and should not be understood to give the landlord's unperfected interest priority over Riverside's perfected security interest. The language limiting the effective time period of the subordination agreement, appellant argues, was only intended to affect amounts due under the agreement and was in no way intended to affect rights existing prior to and apart from the agreement.

The landlord, on the other hand, focuses on the words "no valid claim" shall be made by Riverside against the landlord and argues that the meaning of the agreement is clear; any interest the landlord had in the grain, including an unrecorded security interest, would be free from Riverside's claim after December 1, 1984.

We have held that a contract is ambiguous when, considered as a whole, it is capable of being understood in more senses than one. *Quinn v. Godfather's Investments*, 213 Neb. 665, 330 N.W.2d 921 (1983). We agree with the appellant that the subordination agreement is open to one of two interpretations.

It is unclear whether "no valid claim" refers only to rights created under the subordination agreement or also includes rights existing at the time of the agreement. In such a case it is incumbent upon this court to consider all the facts and circumstances leading up to the contract's execution, and to consider the nature and situation of the subject matter and the contract. *Lauritzen v. Davis,* 214 Neb. 547, 335 N.W.2d 520 (1983).

There was a dispute in the evidence as to which party prepared the "no valid claim" provision in the contract. Without deciding which party the language should be construed against, we make these observations.

First, the facts and circumstances leading up to the execution of the subordination agreement are that on March 19, 1984, the landlord and tenant entered into a lease agreement. The lease called for a lien against the crops to satisfy the landlord's share, but no security agreement was ever filed. On March 30, 1984, Riverside executed and filed a security agreement covering the tenant's interest in crops to be grown on the landlord's ground that year. When the subordination agreement was entered into, Riverside was entitled to believe that it had a first lien in the tenant's interest under the U.C.C.

Second, the nature and the situation of the subordination agreement's subject matter is unique in this case. At the time the subordination agreement was entered into, the landlord's interest in the corn on tract 1 was uncertain. This interest was ultimately to be either an ownership interest or a lien interest, depending upon which option was exercised under the lease. Coincidentally, the tenant's interest in the corn was an ownership interest in either the excess of 6,500 bushels or the entire harvest, depending upon the landlord's choice of rent. The extent of Riverside's lien against the corn was therefore uncertain at the time of the subordination agreement and may well have been the cause of the ambiguity.

Finally, the apparent purpose of the subordination agreement must be considered. The purpose was described in the agreement itself as follows:

> 2. Lessee desires to purchase fertilizer, fuel, and chemicals, from [Riverside], and [landlord] acknowledges

that the supply of such goods are [sic] in its best business interest, in that it will enable Lessee to raise a crop.

3. [Riverside] is willing to advance credit to Lessee for the purchase of the above described goods if [landlord] will subordinate its present and future interests and liens against the above described property of [landlord] to the extent of goods actually supplied for the benefit of the crop grown on the above described real estate.

Clearly, Riverside sought additional security beyond that already provided by the tenant's interest in the crop. The landlord agreed to provide for up to $7,000 in charges beyond the amount that the tenant's share would ultimately satisfy.

In light of the foregoing and construing the contract as a whole, it can only be said that the "no valid claim" language limited the effective time of the subordination agreement itself. It cannot be said that the termination of the agreement affected priority rights existing prior to and apart from the contract itself. To hold otherwise would amount to a forfeiture of Riverside's rights under its perfected security agreement. The subordination agreement does not specifically address itself to lien priorities after termination, and, in the absence of direct language that such a forfeiture was intended, this court will not enforce one. *Long v. Magnolia Petroleum Co.*, 166 Neb. 410, 89 N.W.2d 245 (1958).

In the absence of an agreement to the contrary, priority of the competing interests in this case is determined by Neb. U.C.C. art. 9 (Reissue 1980 & Cum. Supp. 1984). In its fourth assignment of error appellant contends that, at best, the landlord was an unsecured creditor of the tenant and that such an interest is subordinate to Riverside's secured interest under §§ 9-301 and 9-312 (Reissue 1980). The landlord argues that it is entitled to an equitable lien under the terms of the lease, even though it did not file a financing statement, see Neb. U.C.C. § 1-103 (Reissue 1980) (unless displaced by particular provisions, equity principles supplement the U.C.C.), and that Riverside recognized this interest in the subordination agreement.

Even assuming that the landlord was entitled to an equitable lien against the tenant under the lease, it would still be an

unperfected security interest under the U.C.C. So long as the U.C.C. governs the priority question, we must agree with the appellant that its perfected security interest takes priority. The fact that Riverside may have known of the landlord's interest is of no consequence. See, *Todsen v. Runge*, 211 Neb. 226, 318 N.W.2d 88 (1982); § 9-312(5).

Appellant's third assignment was not discussed in its brief and, in any event, is not necessary to the disposition of the appeal.

The landlord's interest in the corn proceeds from tract 1 and the insurance proceeds is subordinate to Riverside's perfected security interest. The district court's order granting a constructive trust upon the corn and insurance proceeds is therefore reversed and remanded with directions to dismiss that part of the landlord's action.

The landlord's interest in the beans from tract 2 was an ownership interest on which Riverside's security interest could not attach. See *Yates v. Kinney*, 19 Neb. 275, 27 N.W. 132 (1886). The district court's order granting a constructive trust upon half of the proceeds of the beans was therefore proper and is affirmed.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS TO DISMISS.