CATTLE NATIONAL BANK OF SEWARD, NEBRASKA, APPELLANT, V.
YORK STATE BANK AND TRUST COMPANY ET AL., APPELLEES.
428 N.W.2d 624

Filed September 9, 1988.   No. 86-867.

Larry L. Brauer, of Allan, Brauer & Mullally, for appellant.

Vincent Valentino, of Angle, Murphy, Valentino & Campbell, P.C., for appellee York State Bank.

HASTINGS, C.J., WHITE, SHANAHAN, and FAHRNBRUCH, JJ., and WARREN, D.J.

HASTINGS, C.J.

This is an action filed for conversion of proceeds of collateral by plaintiff-appellant, the Cattle National Bank, against defendants-appellees York State Bank and Trust Company and Baack Farms, Inc., in the district court for York County. Summary judgment was granted for the defendants, and the petition was dismissed.

Since the matter arises from the entering of summary

judgment, we are obligated to view the evidence in the light most favorable to the party against whom the motion is directed and to give that party the benefit of all reasonable inferences which may be drawn therefrom. *Lowry v. State Farm Mut. Auto. Ins. Co.*, 228 Neb. 171, 421 N.W.2d 775 (1988); *Ford v. American Medical International*, 228 Neb. 226, 422 N.W.2d 67 (1988). Summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Lowry, supra*; *Stodola v. Grunwald Mechanical Contractors*, 228 Neb. 301, 422 N.W.2d 341 (1988).

The Cattle Bank assigns as error that (1) the order of the district court is not supported by substantial and sufficient evidence and is contrary to law, and (2) the trial court erred in holding that there was no genuine issue as to any material fact remaining in the case and that the defendants were entitled to judgment of dismissal as a matter of law.

In February of 1982, Wayne and Leslie Zima (not parties to this action) executed security agreements and financing statements to the Cattle Bank as security for certain notes totaling $152,000 and dated February 23, 1982; April 22, 1983; May 23, 1983; February 15, 1984; April 27, 1984; May 2, 1984; and July 2, 1984. The security agreements and financing statements gave a security interest in

[a]ll farm products or inventory, including but not limited to all livestock, crops, grain, hay, seed, feed, fertilizer, supplies, and products of crops and of livestock, together with all equipment including but not limited to all farm equipment, tractors, non-titled vehicles, machinery, implements, tools, irrigation systems, including but not limited to power units, wells, gearheads, pumps and alternators, dairying systems, all goods owned or used for preparing land or for planting, cultivating, fertilizing, irrigation, harvesting, moving, drying, storing, marketing, or processing of crops, products of crops, grain, seed or feed or for raising, feeding, handling,

breeding, marketing or caring for livestock, all accounts and general intangibles, and debtor's interest in any minerals, including oil and gas. Such security interest shall cover warehouse receipts or other documents of title which evidence storage or possession of crops or products of crops, livestock or products of livestock, or inventory
. . . .

. . . .

. . . on the following described real estate . . .

The West Half of the NW$^1$/$_4$ and the SE$^1$/$_4$ of the NW$^1$/$_4$ of Section 27-12-1; York County, Nebraska;
and

The West Half of Section 27-12-1

The N$^1$/$_2$ of the SE$^1$/$_4$, Section 24-12-1

The E$^1$/$_2$ of the SW$^1$/$_4$, Section 32-11-2 [all in Seward County, Nebraska].

On April 12, 1984, Wayne Zima leased different real estate from Floyd and Elverna Baack and Baack Farms, Inc., for the purpose of farming.

A rent of $70,000 per year was agreed upon. Of this sum, $20,000 was paid per agreement in April of 1984. The balance of $50,000 was to be paid on November 5, 1984. Two rent checks of $50,000 from the Zimas drawn upon the Cattle Bank were dishonored.

In lieu of cash rent, a verbal crop-share agreement was reached wherein Wayne Zima would give enough bushels of corn from the harvest to the Baacks to pay for the $50,000 rent payment. This was according to the affidavit and deposition of Floyd Baack. This decision was made just before Zima began harvesting the crop.

The corn crop was harvested and hauled to the Utica Co-op grain elevator by Zima. Scale tickets were issued in the sum of $50,000 to Zima and Baack. Zima had informed Floyd Baack that he would have the grain receipts reflect the Baack name.

The Utica Co-op then issued a $50,000 draft to Mike Baack, Ted Baack, and York State Bank. Mike and Ted are sons of Floyd Baack, and York State Bank is a secured creditor of the Baacks. The brothers were acting as employees of Baack Farms, Inc. The check was deposited at York State Bank, and

the proceeds were applied against the Baacks' loans.

The Cattle Bank brought this action for conversion of proceeds of collateral in the amount of $50,000 against the Baacks and York State Bank. The defendants answered that the Cattle Bank did not have a valid, perfected security interest in crops grown on ground leased by the Zimas.

The defendants then moved for summary judgment. Upon a hearing on the motions, the court ruled for the defendants and dismissed the petition.

"Conversion is any unauthorized or wrongful act of dominion exerted over another's personal property which deprives the owner of his property permanently or for an indefinite period of time." *Roth v. Farmers Mut. Ins. Co.*, 220 Neb. 612, 614, 371 N.W.2d 289, 291 (1985); *B. E. Implement Co. v. Valley Farm*, 216 Neb. 269, 343 N.W.2d 892 (1984).

"A conversion is any distinct act of dominion wrongfully asserted over another's property in denial of or inconsistent with that person's rights." *PWA Farms v. North Platte State Bank*, 220 Neb. 516, 519, 371 N.W.2d 102, 105 (1985); *Prososki v. Commercial Nat. Bank*, 219 Neb. 607, 365 N.W.2d 427 (1985). "The plaintiff in an action for conversion must allege facts showing a right to immediate possession of the property at the time of the conversion." *PWA Farms, supra* at 519, 371 N.W.2d at 105.

To make out an action in conversion, the Cattle Bank must show that it was the rightful owner of the corn crop. The Cattle Bank possessed some sort of security interest in the Zimas' property, as evidenced by security agreements and financing statements.

Neb. U.C.C. § 9-402 (Reissue 1980) provides in pertinent part as follows:

(1) A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. A financing statement may be filed before a security agreement is made or a security interest

otherwise attaches. *When the financing statement covers crops growing or to be grown, the statement must also contain a description of the real estate concerned.*
(Emphasis supplied.)

The commentary to this section clarifies that the description of land in reference to crops functions as part of the description of the crops concerned. "[T]he security interest in crops is a Code security interest, like the pre-Code 'crop mortgage' which was a *chattel* mortgage." § 9-402, comment 1.

In the instant case, the security agreements and financing statements between the Zima and Cattle Bank parties secured corn growing or to be grown on certain parcels of land. The real estate leased by the Zimas from the Baacks involved separate and distinct parcels from those mentioned in the security agreements and financing statements. Accordingly, no security interest in favor of the Cattle Bank existed in the corn grown on the Baacks' property.

A security interest had not been created in the corn crop allegedly converted. Neb. U.C.C. § 9-203 (Reissue 1980) further provides that such interest could not have attached.

Section 9-203 provides in pertinent part as follows:

(1) Subject to the provisions of section 4-208 on the security interest of a collecting bank and section 9-113 on a security interest arising under the article on Sales, a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless

(a) the collateral is in the possession of the secured party pursuant to agreement, or *the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned*; and

(b) value has been given; and

(c) the debtor has rights in the collateral.
(Emphasis supplied.)

Similarly, in the case of *Landen v. PCA of Midlands,* 737 P.2d 1325 (Wyo. 1987), a security agreement covered crops growing or to be grown on land described as follows:

" 'Various [s]ections, T25N and T26N, R76W, Albany County and various sections, T23N, T24N, T25N, and T26N, R68W, Platte County, Wyoming.' " *Id.* at 1329. The Supreme Court of Wyoming held that the security agreement failed to create a security interest in any crops grown by the Morgans (debtors) as it fell short of reasonably identifying the realty concerned. In so ruling, the court stated that the description did not satisfy either of these two tests:

" '[A] real estate description in connection with crops is sufficient *if* it contains:

" '1. the name of the land owner

" '2. the approximate number of acres of the farm

" '3. the county of the location of the land

" '4. the approximate distance and direction of the farm from the nearest town or city.' " *United States v. Collingwood Grain, Inc.*, 792 F.2d 972, 974-75 (10th Cir. 1986), quoting *United States v. McMannis*, 39 B.R. 98 (Bankr.D.Kan. 1983) (emphasis in original).

It also has been said that:

" '[T]he cautious creditor cannot go wrong by using a section-township legal description, so long as it is accurate.' " Id. at 975, quoting Kansas Comment to Kan.Stat.Ann. § 84-9-402, which discusses *Chanute Production Credit Association v. Weir Grain & Supply, Inc.*, 210 Kan. 181, 499 P.2d 517 (1972).

737 P.2d at 1329.

The legal description in the instant case was accurate as to the named parcels. The scope of the agreement, however, was not enlarged to cover crops on the leased tracts of land. The Cattle Bank made no security filings that listed the legal descriptions of the Baack farm properties.

The Cattle Bank seems to argue in part that the grain was "inventory" being held by the Zimas that would be encompassed within its security agreement. With regard to classification of goods, Neb. U.C.C. § 9-109 (Reissue 1980) provides:

Goods are

. . . .

(3) "farm products" if they are crops or livestock or

> supplies used or produced in farming operations . . . . If goods are farm products they are neither equipment nor inventory;
>
> (4) "inventory" if they are held by a person who holds them for sale or lease . . . .

In construing what is meant by the classifications listed under § 9-109, the court in *First State Bank v. Producers Livestock Marketing Assn.*, 200 Neb. 12, 16, 261 N.W.2d 854, 858 (1978), stated the following:

> Goods which are held for sale or lease are classified as inventory. § 9-109 (4), U.C.C. The Comment to section 9-109, U.C.C., states that the classifications are mutually exclusive and that the principal test to determine whether goods are inventory is whether they are held for immediate or ultimate sale. In borderline cases the principal use to which the property is put should be considered determinative.

The corn is properly classified as a "farm product." As such, it is not inventory because the terms are mutually exclusive as to the same person at the same time. The property cannot be classified as both farm products and inventory. § 9-109, comment 2.

There is no evidence in the record that the grain was held for sale or lease by the Zimas. It is important to note that the $50,000 check issued by the Utica Co-op was in the Baacks' names as well as that of York State Bank. It is this amount which was allegedly converted, yet the Zima name does not appear as the seller or lessor of the so-called "inventory."

The fact that the scale tickets were issued in the names of both Zima and Baack does not make Zima the owner of inventory. Neb. Rev. Stat. § 88-535 (Reissue 1987) states in part that "[a] scale ticket issued by a warehouse licensee shall be prima facie evidence of the holder's claim of title to the goods described in such ticket." The scale tickets accurately reflect coownership of the grain as between a lessor (Baack) and a lessee (Zima). The 19,619 bushels of growing corn from the Baacks' real estate clearly belonged to them as rent payment.

The evidence in this case does not support the finding of a material factual issue as to the ownership of the grain involved

in this action. No perfected security interest existed in the grain on behalf of the Cattle Bank; thus, its rights are clearly subordinate to those of the Baacks. The order of the district court granting summary judgment for the defendants and dismissing the petition was correct and is affirmed.

AFFIRMED.