FARMLAND SERVICE COOPERATIVE, INC., A NEBRASKA
COOPERATIVE, APPELLEE, V. SOUTHERN HILLS RANCH, INC.,
A NEBRASKA CORPORATION, APPELLANT.

665 N.W.2d 641

Filed July 18, 2003.   No. S-02-606.

Ronald H. Stave, of Stave, Dougherty & Stave, for appellant.

Susan C. Williams for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN,
McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Farmland Service Cooperative, Inc. (Farmland), brought this
action against Southern Hills Ranch, Inc. (Southern Hills), for
conversion of 1,800 bales of alfalfa and prairie hay in which
Farmland claimed a perfected security interest. The district
court found that there were no issues of material fact as to the
conversion claim and that Farmland was entitled to a judgment
against Southern Hills as a matter of law. The court found that
the hay was no longer a growing crop but was a farm product.
The court concluded that the filing requirements for a security
interest had been met by the filing of Farmland's security agree-
ment in Lincoln County, Nebraska, the county in which the
debtor resided.

## SCOPE OF REVIEW

■ When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Morello v. Land Reutil. Comm. of Cty. of Douglas*, 265 Neb. 735, 659 N.W.2d 310 (2003).

## FACTS

Farmland loaned money to Bryce L. Franzen for his farming operation. As security for the loan, Franzen executed and delivered to Farmland a financing statement and security agreement which was filed August 26, 1996, with the Lincoln County clerk. Franzen was a resident of Lincoln County at that time. The security agreement provided that Farmland was granted a security interest in "[a]ll farm products or inventory, including but not limited to all livestock, crops, grain, hay, seed, feed, fertilizer, supplies, and products of crops and of livestock . . . ."

In April 1997, Franzen began leasing property in Blaine County from Southern Hills. The lease provided that Franzen was to pay Southern Hills cash rent and that Southern Hills was not to receive any share of Franzen's crops. The lease also provided that Southern Hills would have a security interest in all crops grown on the leased property; however, Southern Hills did not perfect its security interest. In 1998, Franzen grew, harvested, and stored approximately 1,800 bales of hay on the leased property in Blaine County.

Franzen failed to make the required payments on his loan to Farmland, and on February 9, 1999, it obtained a judgment of $30,317.35 against Franzen in the Lincoln County District Court. During the summer of 1999, Farmland discovered that the hay grown by Franzen in Blaine County was missing and that Southern Hills had sold it. Farmland made demand upon Southern Hills to provide an accounting, "based upon [Southern Hills'] representations that the hay on the premises had been the landlord's share."

Southern Hills acknowledged that it had taken the hay and sold it between March 2 and April 26, 1999, for a total sum of $31,750.83, for back rent due and owing. Southern Hills refused Farmland's demand for payment from the proceeds of the hay, and Farmland commenced suit against Southern Hills

for conversion of the hay that Farmland claimed was subject to its security agreement.

Each party filed a motion for summary judgment. The district court found that the hay sold by Southern Hills no longer had the status of a growing crop or crop to be grown, which would require that the security agreement include a description of the property on which the crop was grown in order to perfect the security interest. The court concluded that at the time the hay was sold, it was a farm product, and that Farmland had met the filing requirements by filing its security agreement in Lincoln County, the county in which Franzen resided.

The district court specifically found that collection of the money advanced by Farmland, apart from a petroleum lien which is not at issue here, could be enforced through a valid security interest Farmland held on the hay, which was a farm product. It found however that Farmland was entitled to collect only the amount of its original loan. The court sustained Farmland's motion for summary judgment to the extent that it had a claim against Southern Hills for conversion of the hay. The court sustained Southern Hills' motion for summary judgment as to the balance of the funds claimed by Farmland under the petroleum lien. Judgment was entered for Farmland in the amount of $23,962.91 plus interest.

Farmland moved for a new trial on December 7, 2001. Before this motion was ruled upon, Southern Hills filed a notice of appeal on December 14. That appeal was dismissed by the Nebraska Court of Appeals for lack of jurisdiction. See *Farmland Serv. Cooperative v. Southern Hills Ranch*, 11 Neb. App. xxx (No. A-01-1392, Apr. 1, 2002). Subsequently, the district court held a hearing on the motion for new trial and concluded that the only lien available to Farmland was its $20,000 lien, which followed the hay that was converted by Southern Hills. Thus, the court overruled Farmland's motion for new trial as to the amount of its damages. However, the court found that the amount of damages from the conversion was a liquidated amount and was subject to prejudgment interest from the date of conversion, September 11, 1998. To that extent, the court sustained Farmland's motion for new trial. Southern Hills timely filed its notice of appeal from the court's ruling on the motion for new trial.

## ASSIGNMENTS OF ERROR

Southern Hills assigns as error that the district court erred in finding (1) that the requirements for Farmland's security interest were met because the security agreement did not describe the county in which the hay was grown and stored; (2) that the hay no longer had the status of a growing crop or crop to be grown, which would require a description of the property on which the crop was grown in order to perfect the security interest; and (3) that the hay was a farm product, but also finding that filing requirements had been met by filing the security agreement in the county where Franzen lived, even though the property on which the hay was grown and stored was not described in the security agreement.

## ANALYSIS

Each party filed a motion for summary judgment. Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *K N Energy v. Village of Ansley, ante* p. 164, 663 N.W.2d 119 (2003).

The case before us presents a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Morello v. Land Reutil. Comm. of Cty. of Douglas*, 265 Neb. 735, 659 N.W.2d 310 (2003). The district court determined as a matter of law that the hay sold by Southern Hills no longer had the status of a growing crop or a crop to be grown. The court held that the filing requirements had been met by filing the security agreement in the county where Franzen lived. Therefore, the court concluded as a matter of law that Farmland was entitled to summary judgment. We review that issue independently of the determination made by the lower court.

Southern Hills argues that since the district court concluded that the hay was a farm product and not inventory, Farmland's security agreement had to include a description of Southern Hills' property in Blaine County in order to have been perfected.

Southern Hills points out that the property leased by Franzen from Southern Hills was separate and distinct from the property listed in the security agreement. It asserts that as a result of the failure to describe the real estate upon which the hay was stored, Farmland had no perfected security interest in the hay grown on Southern Hills' property.

At all times relevant to this case, the Nebraska Uniform Commercial Code (U.C.C.) provided:

> (1) The proper place to file in order to perfect a security interest is as follows:
>
> (a) When the collateral is . . . (ii) farm products, including crops growing or to be grown, (iii) farm products which become inventory of a person engaged in farming, (iv) accounts or general intangibles arising from or relating to the sale of farm products by a farmer . . . then in the office of the county clerk in the county of the debtor's residence . . . .

Neb. U.C.C. § 9-401 (Reissue 1992).

The U.C.C. also provided:

> [A] security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:
>
> (a) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned.

Neb. U.C.C. § 9-203(1) (Reissue 1992).

Goods were defined as

> "farm products" if they are crops or livestock or supplies used or produced in farming operations or if they are products of crops or livestock in their unmanufactured states (such as ginned cotton, wool-clip, maple syrup, milk and eggs), and if they are in the possession of a debtor engaged in raising, fattening, grazing or other farming operations. If goods are farm products they are neither equipment nor inventory.

Neb. U.C.C. § 9-109(3) (Reissue 1992).

Southern Hills relies upon *Cattle Nat. Bank v. York State Bank*, 229 Neb. 720, 428 N.W.2d 624 (1988), to support its position that Farmland did not have a perfected security interest in the hay in question. For the reasons set forth below, *Cattle Nat. Bank* does not control our decision in this case.

*Cattle Nat. Bank* involved an action for conversion of proceeds of collateral by Cattle National Bank against York State Bank and Trust Company (York State Bank) and Baack Farms, Inc. In *Cattle Nat. Bank*, Wayne and Leslie Zima executed security agreements and financing statements to Cattle National Bank as security for certain notes totaling $152,000. The agreements gave a security interest in " '[a]ll farm products or inventory, including but not limited to all livestock, crops, grain, hay, seed, feed, fertilizer,' " et cetera. *Id.* at 721, 428 N.W.2d at 626. The security agreements described certain property located in York County and certain property located in Seward County but did not describe the real estate owned by Floyd and Elverna Baack.

On April 12, 1984, Wayne Zima leased different real estate from the Baacks and Baack Farms for farming. Initially, cash rent of $70,000 per year was agreed upon. Although $20,000 was paid, the balance of $50,000 was unpaid because two checks drawn upon Cattle National Bank were dishonored. In lieu of cash rent, a verbal crop-share agreement was reached wherein Wayne Zima would give a sufficient number of bushels of corn from the harvest to the Baacks to make the $50,000 rental payment.

The corn was harvested and taken to an elevator. The elevator then issued a $50,000 draft payable to Mike Baack, Ted Baack, and York State Bank. (Mike and Ted were Floyd Baack's sons, and York State Bank was a secured creditor of the Baacks.) Cattle National Bank brought the action for conversion of the proceeds of the collateral in the amount of $50,000 against the Baacks and York State Bank. The defendants, York State Bank and Baack Farms, claimed that Cattle National Bank did not have a valid perfected security interest in the crops grown on the land leased by the Zimas.

This court concluded that the security agreements and financing statements between the Zimas and Cattle National Bank secured corn growing or to be grown on certain parcels and that the real estate leased by the Zimas from the Baacks involved

separate and distinct parcels from those mentioned in the security agreements and financing statements. It concluded, therefore, that no security interest existed in favor of Cattle National Bank on the corn grown on the Baacks' property.

Cattle National Bank argued that the grain was inventory held by the Zimas that would be encompassed within the security agreement. Although the court in *Cattle Nat. Bank* did not address this issue, the factor that distinguishes that case from the case at bar is that part of the Zimas' lease was converted from cash rent to a crop share. The corn was harvested and hauled to the elevator, which issued a $50,000 draft to Mike Baack, Ted Baack, and York State Bank. At the time the crop was harvested, the Zimas had no interest in that part of the crop to which the security interest of Cattle National Bank attached.

We distinguished a crop share lease from a cash rent lease in *Lone Oak Farm Corp. v. Riverside Fertilizer*, 229 Neb. 548, 428 N.W.2d 175 (1988). There, we held that the landlord's interest in beans from a tract farmed by the tenant was an ownership interest to which the mortgagee's security interest could not attach. We stated that where land is leased and rent is to be paid by a share of the crops to be raised, the landlord and tenant are tenants or owners in common of the growing crops until such time as the crop is harvested and divided. The tenant may mortgage or sell his interest in the crop, but his mortgagee is charged with notice of the landlord's interest. *Id.* The tenant's interest is determined by the terms of the lease, and the mortgagee can take no greater interest in the crop as against the landlord than could be asserted by the tenant himself. *Id.* If, on the other hand, the lease is on a cash rent basis, the cotenancy relationship does not exist, and the landlord's only recourse in the crops would be through an agreement with the tenant to give a security interest in the crops. See *Todsen v. Runge*, 211 Neb. 226, 318 N.W.2d 88 (1982). The crop-share agreement in *Cattle Nat. Bank v. York State Bank*, 229 Neb. 720, 428 N.W.2d 624 (1988), factually distinguishes that case from the case at bar.

A dispute similar to the present case was decided in *Albion Nat. Bank v. Farmers Co-op Assn.*, 228 Neb. 258, 422 N.W.2d 86 (1988). Thomas and Veronica Shotkoski were operators of a multicounty farm operation. Albion National Bank of Albion,

Nebraska, advanced funds to the Shotkoskis for the 1984 crop year, which funds they used to pay expenses for their entire operation, including those associated with land located in Platte and Boone Counties.

The 1984 corn in question was grown in Platte County. After harvest, it was transported and stored in Boone County. The Shotkoskis subsequently delivered the corn to the Farmers Cooperative Association of St. Edward. In exchange, the cooperative credited $10,120 against the Shotkoskis' outstanding debt there.

It was stipulated that at no time did the bank have a perfected security interest in the corn by the filing of documents in Platte County. The bank did have a perfected security interest in the Shotkoskis' farm products in Boone County from August 24, 1981, through the date on which the corn in question was delivered to the cooperative and thereafter.

The cooperative did not allege a competing security interest but argued that the bank had no security interest in the corn and was therefore not entitled to the proceeds realized from the sale to the cooperative. At that time, § 9-401 (Reissue 1980) provided in relevant part:

"(1) The proper place to file in order to perfect a security interest is as follows:

". . . .

"(c) When the collateral is any other type of tangible or intangible personal property, the following rules apply: When the debtor is a resident of this state, then in the office of the county clerk in the county of the debtor's residence." *Albion Nat. Bank v. Farmers Co-op Assn.*, 228 Neb. at 259-60, 422 N.W.2d at 89.

This court noted that farm products were clearly within the meaning of the phrase " 'other . . . tangible or intangible personal property.' " *Id.* at 260, 422 N.W.2d at 89, citing *Genoa Nat. Bank v. Sorensen*, 208 Neb. 423, 304 N.W.2d 659 (1981). Section 9-109 (Reissue 1980) defined "farm products" as " 'crops . . . in the possession of a debtor engaged in raising, fattening, grazing or other farming operations. . . .' " *Albion Nat. Bank v. Farmers Co-op Assn.*, 228 Neb. at 260, 422 N.W.2d at 89. Comment 4 to § 9-109 stated: " 'Products of crops or livestock remain farm

products so long as they are in the possession of a debtor engaged in farming operations and have not been subjected to a manufacturing process. . . .' " *Albion Nat. Bank v. Farmers Co-op Assn.*, 228 Neb. at 260, 422 N.W.2d at 89.

In *Albion Nat. Bank*, we concluded that drying corn, while an act of processing, was not a manufacturing process as that term was understood within the context of article 9 of the U.C.C. and that, therefore, the corn in question remained a farm product while dried and stored on the Shotkoskis' land in Boone County. We noted that the cooperative's difficulty with the result in the court below seemed to be an unwillingness to accept the notion that under article 9 of the U.C.C., goods can change character from one class of collateral to another as circumstances change. As this change in character occurs, goods which have previously fallen outside the scope of a perfected security interest in a certain class of collateral may come within the scope of that security interest, and goods previously within the scope of such a security interest may fall outside of it. Where the filing requirements for perfection of a security interest under the U.C.C. differ depending upon the character of the collateral, and where the filing requirements are not met regarding one character of collateral but are met regarding another character of collateral, a security interest in the collateral is perfected as of the time the collateral changes character from that as to which filing requirements were not met to that as to which filing requirements were met. *Albion Nat. Bank v. Farmers Co-op Assn.*, 228 Neb. 258, 422 N.W.2d 86 (1988).

Once harvested, transported to Boone County, and dried, the corn was no longer a growing crop in Platte County but became a farm product in Boone County, as to which the bank had previously perfected a security interest. *Id.*

> [I]f an otherwise unperfected security interest in collateral of a certain character is not filed at all places required by the Uniform Commercial Code, but is filed at all places required by the code regarding another character of collateral, and the collateral later changes character and becomes that as to which filing meets the requirements of the code, the security interest becomes perfected when the change in character occurs, and the security interest thus

perfected has rights superior to all other liens not perfected prior to the time the change in character occurred.
*Id.* at 262-63, 422 N.W.2d at 90.

We noted that although the bank's financing statements did not contain a description of the land in Platte County and therefore the bank's security interest, if any, in growing crops in Platte County was not perfected, this fact was not relevant to our decision. The relevant fact was that the bank had a perfected security interest in farm products in Boone County. The Boone County land was at all relevant times adequately described in the financing statements on file in that county, and by the time the Shotkoskis delivered the corn to the cooperative, that which had once been a crop growing or to be grown in Platte County had become a farm product in Boone County by virtue of having been dried and stored there. Under § 9-401(1)(a) (Reissue 1980), the bank had a perfected security interest in the Boone County farm product.

In the case at bar, we conclude, as did the district court, that the hay in question when sold by Southern Hills no longer had the status of a growing crop or a crop to be grown, which would require that the security agreement include a description of the property on which the crop was grown in order to perfect the security interest. When the crop was harvested and baled, it became a farm product, and the filing requirements were met by the filing of Farmland's security agreement in Lincoln County, where Franzen lived.

The lease between Franzen and Southern Hills provided that it could be considered and construed as a security agreement under the U.C.C. The lease was for cash, not a share of Franzen's crops. However, nothing in the record indicates that Southern Hills took any action to perfect the lease as a security agreement. Since Southern Hills' lien was a landlord's lien based on contract, Southern Hills had to comply with the filing requirements of the U.C.C. in order to perfect its security interest. See *Todsen v. Runge*, 211 Neb. 226, 318 N.W.2d 88 (1982).

Pursuant to § 9-401 (Reissue 1992), in order to perfect its security interest, Farmland was required to file its security agreement in Lincoln County, the county of Franzen's residence. We conclude that Farmland's security interest in the collateral became

perfected when the hay was harvested and became a farm product. Therefore, Farmland's perfected security interest has priority over Southern Hills' unperfected security interest. Southern Hills converted property belonging to Farmland. Conversion is any unauthorized or wrongful act of dominion exerted over another's property which deprives the owner of his property permanently or for an indefinite period of time. See *Cattle Nat. Bank v. York State Bank*, 229 Neb. 720, 428 N.W.2d 624 (1988). It was not necessary that the security agreement contain a legal description of the property on which the hay was to be grown. At no time did Southern Hills have an ownership interest in the hay by virtue of its lease agreement, as was the case in *Cattle Nat. Bank*. The lease was a cash rent agreement, and Southern Hills never had a perfected security interest in the hay. The party who is first to perfect a security interest has a priority over all unperfected security interests. See *Todsen v. Runge, supra*.

## CONCLUSION

Since the hay at issue was no longer a growing crop, a description of the land in Blaine County on which the hay was grown and stored was not required in order to perfect Farmland's security interest. Because Farmland had a perfected security interest in the hay, it was entitled to judgment as a matter of law against Southern Hills for conversion of the hay.

For the reasons set forth herein, the judgment of the district court is affirmed.

AFFIRMED.